## UNITED STATES v. GUTTERMAN.
### No. 83.

Circuit Court of Appeals, Second Circuit.

Jan. 15, 1945.

FRANK, Circuit Judge, dissenting.

———◇———

Clyde Dart, of New York City (Domenic V. A. Della Volpe, of New York City, of counsel), for appellant, Maurice Alvin Gutterman.

T. Vincent Quinn, U. S. Atty., of Brooklyn, N. Y., (Vine H. Smith and Maurice Z. Bungard, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for appellee, United States of America.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant Gutterman was indicted under two counts (1) for raising the amount of a United States postal money order from $1 to $91, and (2) for wilfully, knowingly and feloniously passing it. He was convicted by a jury upon both counts and appeals to this court on the ground that the trial court (1) unlawfully refused to dismiss counsel who had been assigned to

him but no longer had his confidence, and (2) unlawfully denied his request to subpœna a certain witness material to his defense. Neither point is well taken and the judgment should be affirmed.

After the jury was sworn and the actual trial was about to begin on March 16, 1944 defendant's attorney Morris Packer, who had sometime before been assigned to represent the defendant, informed the court that the defendant wanted to make an application in person, whereupon ensued the discussion set forth below [1] after which the court directed the trial to proceed.

 It appears by the appended excerpt from the record that about March 7, 1944, the defendant asked the court to dismiss Mr. Packer who had been assigned by the court as attorney to look after his defense and that the request was reiterated at the opening of the trial on March 16, 1944. The only reasons given for dissatisfaction were: (1) that Packer had told his client that the government had too much evidence against him and had advised him to plead guilty, and (2) that Packer was unwilling to subpœna a witness named Angelo to show that the defendant was not the man who passed the postal money order. We have carefully examined the trial minutes and find that the proof against Gutterman was overwhelming. In the colloquy between the defendant, his attorney and the court, which we have appended, the defendant said to the court that Angelano would testify that Horan to whom Gutterman was supposed to have passed the mon-

---

[1] "The Defendant: Well, on the 7th and 8th of March, I asked your Honor to dismiss Mr. Packer.

"The Court: And I told you I wouldn't. Go ahead.

"The Defendant: I haven't got any witnesses to defend me or anything of the sort. Mr. Packer didn't want to subpoena witnesses, and Mr. Packer last night told me that he thought the Government had too much evidence against me, he was going to advise me to plead guilty. If I am going to plead guilty, I might as well defend myself.

"The Court: What witnesses are you referring to?

"The Defendant: Ambers Angelano. He will testify to how they identified me.

"The Court: Who?

"The Defendant: The postal inspector and the person I am supposed to have passed this money order on to.

"The Court: When did they identify you; when?

"The Defendant: On January 31st.

"The Court: The day of your arrest?

"The Defendant: No, the day I was taken to court here the first time.

"The Court: That has no bearing on the issues in the case.

"The Defendant: The man that I am supposed to have passed the money to identified a Chinese boy as me; and when I stood up in the bull pen downstairs he identified me to the marshal.

"The Court: I believe that has no bearing on the issues in the case. I don't see that that testimony would be admissible. Is that the only witness you have in mind?

"The Defendant: Yes.

"The Court: Oh, I think you can go to trial—if you didn't wish to take your attorney's advice.

"Mr. Packer: I went over all of this, the very same things with Mr. Gutterman, and I said that in my opinion the testimony was not relevant and material; and I did say to him yesterday if the evidence at the close of the Government's case in my opinion was strong and convincing, I would give him the advice to plead guilty. This man has no confidence in me. I would much rather withdraw and let him try his own case. He has a right to do it.

"The Court: I know, but you have been assigned by the Court and you are standing in this court as such, and I am not going to dismiss you merely because the defendant thinks he does not approve of you.

"Mr. Packer: Except that he has no confidence in me; anything I might do he might regard with suspicion.

"The Court: We will see what the evidence in the case is.

"Mr. Packer: I simply expressed my opinion as to what evidence and what witnesses I thought were necessary and material. My correspondence shows that. When I talked to this man I asked him to give me the names of witnesses, other than those that he had mentioned at my first conference. May I refer to the correspondence?

"The Court: Yes.

"Mr. Packer: After I was assigned I obtained a copy of the indictment from the United States Attorney's office, under the statute. I had a conference that day with Mr. Gutterman and he turned over to me some of those witnesses, the names of those witnesses that he has referred to; and I told him, in my opinion, their testimony wasn't relevant and material and there was no sense in going through the necessary trouble of trying to locate them, although the probabilities of locating them, in my opinion, were at best, doubtful. * * *"

ey order identified a Chinese boy as Gutterman. It is doubtful whether a statement by Angelano that Horan once identified the Chinese boy, rather than Gutterman, as the culprit would have had any weight inasmuch as Horan gave directly opposite testimony and Gutterman confirmed it by a written statement which he gave to Post Office Inspector Whitman W. Haynes on April 9, 1943 at Tulsa, Oklahoma, wherein he admitted that he obtained a postal money order for $1 and raised it to $91. We can see no merit in the defendant's objections to the conduct of Mr. Packer as his attorney who, when the defendant had declined to plead guilty as he had been advised to do, actively managed the defense of his client and in the course of the trial raised all reasonable objections to the government's proof. We certainly do not accede to the defendant's theory that a client can require his attorney to call witnesses, if there is no likelihood of the truth of the testimony that will be elicited and where the attorney's well-founded judgment is that its production at the trial would do more harm than good.

■ As for the claim that the court unlawfully declined to dismiss the attorney who had been assigned to defend him and was not shown to be unfaithful or incompetent, it is in substance the same as the contention that we held to be unfounded in United States v. Mitchell, 2 Cir., 137 F.2d 1006, and Id., 2 Cir., 138 F.2d 831.

There we had to deal with a defendant's contention that he was seeking to discharge his attorney merely in order to exercise his right to conduct his own defense, just as we have to do here. In neither case did it appear that the defendant was really seeking to take over the personal conduct of his defense or that he was doing more than to claim the privilege of changing his counsel because he did not approve of the latter's judgment. To yield to such a request where the defendant has not made it clear that he really wished to conduct the defense in propria persona gives far too great a chance to delay trials and otherwise embarrass effective prosecution of crime.

■ The statement made by the defendant to the trial judge: "If I am going to plead guilty I might as well defend myself" was not the equivalent of a request that he be allowed to take over his defense. At most it amounted to no more than saying that he would defend himself rather than plead guilty. What he apparently wanted was the assignment of another lawyer who, he hoped, would conduct the case just as he directed. His failure to take the risk of acting on his own behalf while retaining Mr. Packer to conduct his defense gave him the advantage of being represented by counsel and at the same time of preserving an objection to the failure of the court to accede to his primary wish of obtaining counsel more to his personal liking.

■ If a defendant is unable to employ an attorney he must accept such counsel as the court assigns unless he can furnish a better reason for requiring a change than he has given here or unless he chooses to dispense with counsel and undertake his own defense. In the case at bar, when Gutterman found that he could not procure another assignment he availed himself of the services of the excellent lawyer appointed by the court and relied on his objections to counsel in order to upset a verdict though based on overwhelming proof of guilt.

■ We have already shown that the failure to obtain a subpœna was not ground for reversal. Moreover, the evidence the defendant hoped to secure only affected the first count and not the length of the sentence on the two counts, since the sentences were to run concurrently, and there is no claim that the defendant sought to call a witness who would do more than deny that he was the man who "passed" the postal money order which he had raised. He suggested no proof to contradict the government's evidence that he was the person who raised the money order for $1.

■ We think it clear that the evidence against Gutterman proved his guilt beyond peradventure and hold that the conviction must accordingly stand.

Judgment affirmed.

FRANK, Circuit Judge (dissenting).

There was enough, I think, in Gutterman's statement ("If I am going to plead guilty, I might as well defend myself.") and in the lawyer Packer's statement ("This man has no confidence in me. I would much rather withdraw and let him try his own case. He has a right to do it.") to require the trial judge to ask Gutterman whether he wanted to proceed without any lawyer instead of being represented by counsel whom he utterly mistrusted. In failing to make that inquiry and in then

compelling Gutterman to be defended by that counsel, I think the judge committed reversible error. My reasons for so thinking I have stated in detail in United States v. Mitchell, 2 Cir., 137 F.2d 1006, 1011, and Id., 2 Cir., 138 F.2d 831, 832.