## McDONALD v. SWOPE.
### No. 28210.

In the Ninth Judicial Circuit Before William Denman, United States Circuit Judge of that Circuit.
July 24, 1948.

**DENMAN, Circuit Judge.**

Petitioner on the hearing of the order to show cause filed an amended petition, upon which the writ was issued. The Warden made his return and it was stipulated that the amended petition should be deemed petitioner's traverse to the return.

Hearing was had. The petitioner did not testify but offered in evidence the depositions of Judge Moinet, who presided at the trial on which petitioner was convicted, of United States Attorney Babcock, prosecuting him, and of George F. Curran, the attorney defending him.* Petitioner, without counsel, and Assistant United States Attorney Joseph Karesh argued the case and it was submitted.

On this evidence I find that each of the allegations of the amended petition is true and conclude that the Warden is holding the petitioner without warrant on a commitment on an invalid judgment.

### Opinion

This is petitioner's third proceeding for a writ of habeas corpus. It presents a ground on which the facts were known to petitioner at the time of the filing of the prior two petitions, but concerning which petitioner "was unaware of the significance of [the] relevant facts."[1]

---

* It was stipulated that the depositions were those appearing in the transcript in McDonald v. Johnston, 67 S.Ct. 480, No. 637 in the United States Supreme Court in the October Term 1946, Judge Moinet's in pages 7 to 23; Curran's at page 31, and Babcock's at page 55. Also stipulated in evidence are the letters from the Michigan State State Bar at page 30, the memorandum and order of Judge St. Sure at page 73, and the opinion in the court of Appeals at page 144.

[1] The parties are agreed that the only relevant prior petitions are those in McDonald v. Hudspeth, 10 Cir., 129 F.2d 193, and McDonald v. Johnston, 9 Cir., 157 F.2d 275. It is agreed that the case of McDonald v. Johnston, 9 Cir., 149 F.2d 768, was upon an entirely different issue and that McDonald v. United States, 6 Cir., 166 F.2d 323, is not in the nature of coram nobis, though

There is no clearer case showing the wisdom of the decision of the Supreme Court in Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 1063, in which it was said, "In the second place, even if it is found that petitioner did have prior knowledge of all the facts concerning the allegation in question, it does not necessarily follow that the fourth petition should be dismissed without further opportunity to amend the pleadings or without holding a hearing. If called upon, petitioner may be able to present adequate reasons for not making the allegation earlier, reasons which make it fair and just for the trial court to overlook the delay. The primary purpose of a habeas corpus proceeding is to make certain that a man is not unjustly imprisoned. And if for some justifiable reason he was previously unable to assert his rights *or was unaware of the significance of relevant facts,* it is neither necessary nor reasonable to deny him all opportunity of obtaining judicial relief." (Emphasis supplied.)

The petitions filed in the two prior cases are a confused intermingling of allegations and attached exhibits which failed to set forth the contentions here urged. Petitioner, a layman, is one of those persons who, as stated by the Supreme Court in the Price case, "are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel in habeas corpus proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession. Especially is this true in a case like this where the imposition of those standards would have a retroactive and prejudicial effect on the prisoner's inartistically drawn petition. Cf. Holiday v. Johnston, 313 U.S. 342, [343,] 350, 61 S.Ct. 1015, 1017, 85 L.Ed. 1392; Pyle v. Kansas, supra, 317 U.S. [213,] at page 216, 63 S.Ct. [177,] at page 178, 87 L.Ed. 214; Tomkins v. Missouri, 323 U.S. 485, 487, 65 S.Ct. 370, 371, 89 L.Ed. 407; Rice v. Olson, 324 U.S. 786, 791, 792, 65 S.Ct. 989, 992, 89 L.Ed. 637."

■ His petition before me was amended so that it states for the first time the later realized reasons and facts showing the failure to constitute a constitutional court for the trial in which he was convicted—particularly for the first time realizing that the duty of *his attorney* to tell the court the powerful interest of the attorney adverse to petitioner which made it clear that the attorney was disqualified to represent him. Once stated, the defect in the court protrudes like the "sore thumb" of colloquial speech.

I find and hold that here has been no abusive use of the writ.

The undisputed facts are that petitioner, then imprisoned under another sentence, was indicted with one Barnowski on charges of violations of 12 U.S.C. 588(b), subsections a and b, 12 U.S.C.A. § 588b (a, b), respecting the robbery of a Federal Reserve Bank. There were six counts of the indictment on which petitioner, on January 24, 1939, was tried and on January 26th sentenced to a 35-year imprisonment, later reduced to 25 years.

The indictment on which he was convicted was returned to May 4, 1938. There was a long delay in its prosecution. On October 5, 1938, petitioner employed one Curran, an attorney, to secure immediately a writ of habeas corpus to procure a prompt trial.

Believing Curran had not made such an application and that Curran was derelict in not doing so, petitioner on November 1938, filed with the grievance committee of the Michigan State Bar Association charges against Curran for malpractice in failing to apply for such a writ of habeas corpus. During all the relevant times thereafter and until March 10, 1939, that is after petitioner had been convicted and sentenced, petitioner's charges against Attorney Curran were pending before the Michigan State Bar Association.

■ Although petitioner was entitled to believe that his charges against Curran terminated any prior relationship of attorney and client, Curran, without advising petitioner, on January 10, 1939, entered his ap-

the Sixth Circuit relies on and reaches the same conclusions as the Tenth Circuit in McDonald v. Hudspeth, supra; later considered in this opinion.

pearance as petitioner's attorney for his defense under the indictment under which he was subsequently convicted.

However, though in so attempting to assume the representation of petitioner, Curran attempted no contact with him to prepare his defense until the night of January 23—that is the night before the case was set for trial—when petitioner was consulting with another attorney for his defense. Curran stated that he was petitioner's attorney but did not obtain the names of any witnesses from petitioner. The reason he then obtained the names of no witnesses for the defense at the trial beginning the next day is apparent from his testimony that "Well, there was a little bit strained feeling between McDonald and myself at that time. We did not have an awful lot of conversation. I merely informed them that I would be in court the following day, as I had filed an appearance and would have to be there."

From the above facts I infer that there was a feeling of hostility between petitioner and Attorney Curran which Attorney Curran then realized by his failure to obtain the names of petitioner's witnesses.

On the morning of January 24, 1939, before the trial commenced, the differences between attorney and client continued and Attorney Curran said to the petitioner that "I could not and would not ask to be discharged from the case, but that if he [the petitioner] wanted he could so advise the court, which he did." Curran further testified: "Q. Did the court grant his request. A. It did not."

From Curran's false statement that he "could not * * * ask to be discharged from the case," it is apparent that the layman petitioner well could feel that he was entrapped for the trial of the case through an attorney purporting to represent him where, if convicted, the petitioner would be imprisoned and unable to prosecute his charge of malpractice against his attorney and where, in the malpractice hearing, his conviction could be offered as a justifica-

tion for the failure to seek the writ of habeas corpus for a prompt trial.

In these circumstances it is obvious that it was Attorney Curran's duty to advise the court of the facts, to ask to be discharged from his representation of petitioner, and to ask for a continuance of the trial of petitioner until through the court or otherwise, an attorney was appointed without any adverse interest to his client.

The evidence is clear that instead of such action by Attorney Curran he did nothing, this being the testimony of both Judge Moinet and of the prosecuting attorney, whose depositions were taken and put in evidence before me.[2]

It is thus apparent that the essential element of the relationship of attorney and client, namely, mutual trust and confidence, was glaringly absent. Obviously no client in that situation would feel himself safe in communicating to such an attorney facts which would appear at the trial tending to incriminate him, but which could be controverted. If he gave him the names of witnesses to prove an alibi he would fear that such an attorney would fail to find them.

This interest of the attorney adverse to the client who was prosecuting him for malpractice is more marked than in the case of Glasser v. United States, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680, for Glasser's attorney had an interest adverse to him merely because he represented another client in the same trial with a possible diverse defense. The failure of Glasser's attorney efficiently to represent him consisted of the *condition of that attorney's mind* because of his adverse interest of the other client. Here the adverse interest of the attorney infected the petitioner's mind with hostility because of the adverse interest in his attorney with respect to the charges pending against that attorney by his client and, unless the attorney had the mental skin of a rhinoceros, he then must have realized it. It is the condition of mind

---

[2] Curran's deposition states that petitioner fully stated to the court that petitioner was then proceeding against Curran in the malpractice proceeding. In accepting the statements of Judge Moinet and the United States Attorney that Curran's statement was untrue, it seems clear that Curran's false statement was because he realized the malodorous position he was in and wished to transfer the responsibility to the judge.

of attorney and client which determines the adverse interest.

On the morning of the trial on January 25th, at its beginning, the petitioner advised the court that there was a difference existing between himself and Curran. The testimony of the prosecuting attorney there present is as follows:

"Q. Do you recall any conversation that occurred at the commencement of the trial relative to any statement made by the petitioner McDonald in court that morning? A. I remember that when Court opened Judge Moinet asked if we were ready to proceed with the trial, and I advised him the Government was ready to proceed. I don't recall what response Mr. Curran made, but I recall that McDonald rose from his chair and said to the Court that he had been having some differences with his attorney and *desired opportunity to obtain another attorney. But that was all that was said."* (Emphasis supplied.)

On this Judge Moinet testified, as follows:

"Q. Was there any request made by Barnowski or McDonald or by Curran their lawyer, that you continue the case on that morning, a formal request? A. No.

"Q. Judge, what did occur in connection with Walter McDonald making some statement in Court that morning? A. Shortly after the case was called, and, if I mistake it not, the jury was drawn and sworn, McDonald said he had some little disagreement with his attorney.

"Q. Did he state the nature of that disagreement? A. He did not; and the Court waited for some time for him to advise the Court of the nature of the difficulty. *Mr. Curran said nothing and nothing further was said by McDonald or Barnowski in reference to that particular subject.*

"Q. So that you were never informed that morning, or at any subsequent time, as to what the nature of the alleged difficulties between Barnowski and McDonald and their counsel was? A. I was not.

"Q. Had anything been said in the Court that morning by McDonald or Curran, his attorney, to the effect that McDonald and Barnowski had filed any charges with the Bar or Bar Association

of Michigan against their attorney, George Curran? A. There was not; and I never heard of the subject until yesterday and that was from you and the United States Attorney who tried the case, Mr. Babcock." (Emphasis supplied.)

It thus appears that Judge Moinet was advised that there was a difference between attorney and client and that instead of inquiring the nature of the differences he waited for the layman petitioner to expand them. In this connection it is pertinent that Curran had told petitioner that he *"could not"* request a discharge, from which petitioner well could conclude that Curran had a right to continue as petitioner's attorney and that it was futile to attempt to remove him.

While the court was waiting for the development of the differences between petitioner and Curran, it became more emphatically Curran's duty to advise the court fully of the circumstances and ask to be discharged from the case. Instead, as testified by Judge Moinet, "Mr. Curran said nothing," and the testimony of the United States Attorney that nothing of the kind was said.

At this time the law had not been declared as it was later in Glasser v. United States, supra, and, quite likely, had I been in Judge Moinet's position I would not have inquired and would have waited and, in the absence of further information, would have continued with the trial with Curran as petitioner's attorney.

▮ However, the Glasser case makes it clear that in such a situation it is the duty of the judge not to remain silent but to interrogate both attorney and client as to the nature of the differences between them. As the court there stated, in 315 U.S. at page 71, 62 S.Ct. at page 465, 86 L.Ed. 680, "The court made no effort to reascertain Glasser's attitude or wishes. Under these circumstances to hold that Glasser freely, albeit tacitly, acquiesced in the appointment of Stewart is to do violence to reality and *to condone a dangerous laxity on the part of the trial court in the discharge of its duty to preserve the fundamental rights of an accused."*

■ If this is true of Glasser, an attorney, it is true a fortiori of petitioner, a layman. The Glasser rule is an application to the case of the continuance of a disqualified counsel of the court's duty with respect to the waiver of counsel stated in Johnson v. Zerbst, 304 U.S. 458, 465, 58 S. Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357,

"This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

If the judge so had attempted to ascertain the relationship of this attorney with his client, his own statement of what would have happened is apparent from his testimony, as follows: "If they had told me the real facts, if there were any real facts, I would have excused the jury and made an investigation and if I had been satisfied that their differences were of such a nature that in my opinion the counsel could not proceed fairly, solely in the interest of the defense or defendants, I would have appointed their counsel, for them, had they shown their inability to procure counsel." Had the judge so acted there necessarily would have been a substitution of attorneys and a continuance to enable the substitute attorney to conduct petitioner's defense.

■ From the above facts I conclude that no constitutional court had been formed for petitioner's trial under this indictment. There are three essentials to constitute such a court: the judge, the attorneys who are officers of the court, and the jury. Here, clearly, there was no attorney who could give efficient aid as counsel.

This is true, even though no statement had been made to the court. Because the layman petitioner attempted to get the facts before the court but did not succeed without the aid of Attorney Curran or otherwise, does not create in the court its constitutional character. However, to this is added the failure of the court to inquire when advised that differences existed. Thus it is clearer that petitioner was deprived of his constitutional right and that the trial and the judgment following such a trial must be declared without the jurisdiction of the court and void.

■ This does not mean that whenever the court at the beginning of a trial is told a dispute exists between an accused and his attorney that there must be a continuance and a substitution of another attorney. It means no more than that the judge must inquire into the nature of the dispute, as Judge Moinet says he would have done. This is what was done by the trial judge in United States v. Gutterman, 2 Cir., 147 F. 2d 540, 157 A.L.R. 1221, where Judge Augustus Hand's opinion sets forth all the colloquy showing the nature of the differences between the attorney and client and upheld (Judge Frank dissenting) the trial court's continuance of the trial with that attorney. Similarly the full evidence was stated in United States v. Mitchell, 2 Cir., 138 F.2d 831. In neither case was the difference one where the client could feel that if he were convicted his attorney would be greatly aided in defending his client's malpractice proceeding against him.

■ The Warden contends that the Glasser case requires that, despite such disqualification, something more in the way of prejudice must be shown in the preparation for or in the conduct of the trial. In this I cannot agree. Enough may be inferred from the relationship of the client in the then prosecution of his self-enforced attorney for a prior malpractice. However, further prejudice clearly appears.

On the opening of the trial, Curran had obtained the names of no witnesses for petitioner's defense. It was clearly his duty to move the court for a continuance so he could consult with these witnesses and be prepared to cross-examine the government's witnesses as the prosecution of the case developed. No self-respecting attorney for a client charged with an offense so serious that conviction meant at least a 25-year imprisonment would fail to ask for such a continuance. Yet the testimony of

Judge Moinet, all of which I believe, is that Curran asked for no such continuance.

What the precise amount of prejudice this failure to procure a continuance produced, I am not required to measure, for the Glasser case states in 315 U.S. at page 75, 62 S.Ct. at page 467, 86 L.Ed. 680,

"To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart [Glasser's attorney] as counsel for Kretske is at once difficult and unnecessary. *The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.* Cf. Snyder v. Massachusetts, 291 U.S. 97, 116, 54 S.Ct. 330, 336, 78 L.Ed. 674, 90 A.L.R. 575; Tumey v. Ohio, 273 U.S. 510, 535, 41 S.Ct. 437, 445, 71 L.Ed. 749, 50 A.L.R. 1243; Patton v. United States, 281 U.S. 276, 292, 50 S.Ct. 253, 256, 74 L.Ed. 854, 70 A.L.R. 263. And see McCandless v. United States, 298 U.S. 342, 347, 56 S.Ct. 764, 766, 80 L.Ed. 1205. *Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by insisting, or indeed, even suggesting that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court.* * * * (Emphasis supplied.)

Here, concurrently with representing petitioner, was the violation of the duty of counsel to be free of an interest not only "which *might* diverge from those of his * * * client" but which *in fact* fundamentally diverged from those of his client.

■ In my opinion, the failure to secure a continuance was as much a denial of due process by the attorney as there was a denial of due process by the court in Powell v. Alabama, 287 U.S. 45, at page 71, 53 S. Ct. 55, at page 65, 77 L.Ed 158, 84 A.L.R. 527, where the Court states that the duty to provide counsel "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case. To hold otherwise would be to ignore the fundamental postulate, already

adverted to, 'that there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard.' "

■ The failure of the court here to inquire into the nature of the dispute led to such an unprepared trial. I could have ordered the petition amended to add this further denial of due process to conform to this proof. However, I consider that unnecessary since it proves petitioner's contention that the absence of effective representation of counsel caused him prejudice.

The Warden contends that a court loses jurisdiction by the absence of an effective defending officer only by some positive act of the court itself. In this I disagree. The failure of the court to ascertain the nature of the attorney's adverse interest is sufficient. Further it is my opinion that if nothing had been stated to the court, it nonetheless could be shown that it had lost jurisdiction. Certainly in a habeas corpus proceeding it could be shown that the court lost jurisdiction where its defending officer had been bribed by the enemy of his client to secure his client's conviction. As stated, the attorneys, the court's officers, are as much a part of a fully constituted court as are the judge and jury.

The Warden relies strongly on the decision of the Tenth Circuit in McDonald v. Hudspeth, 10 Cir., 129 F.2d 196, 198. There the court found that "two days before the trial, Curran consulted petitioners [there was a codefendant also represented by Curran] at the county jail. Their defense was discussed and Curran advised them that he would appear for them at the trial. They did not advise him that they did not desire him to represent them, although some feeling existed between McDonald and Curran."

Here, the testimony of Curran is to the exact contrary that "There was some talk the date of the trial about my representing Mr. McDonald, and I told him at that time that I could not and would not ask to be discharged from the case, but that if he wanted he could so advise the Court, which he did. Q. Did the Court grant his request? A. It did not."

I cannot believe that if this had been found by the Tenth Circuit, it would have

held that Curran did not violate his obligation to petitioner to supplement the statement of his layman client by telling the court that his client was prosecuting him for malpractice. Whether or not the malpractice charge was well founded is irrelevant. What is relevant is that petitioner did not want Curran because of the pending prosecution of that charge. Furthermore, the Tenth Circuit's opinion, in approving Curran's conduct, states in 129 F.2d at page 198, "Curran discussed the question of an appeal with petitioners. Barnowski agreed to raise the funds for the appeal from his friends and relatives. The funds not being forthcoming, the appeal was abandoned."

On the contrary, Curran's testimony before me is that he never filed a notice of appeal, although he felt the court had erred in rulings warranting the appeal. The testimony is "Q. And do you have an opinion as to whether or not they had a fair trial in the courtroom? A. It is a question of whether my view point of the law coincides with the trial judge's. I may be wrong, and I wouldn't want to state on that. Q. The matter you refer to in your answer is a question of interpretation of rulings of the Court on law? A. Rulings of the Court on Law." And, "Q. Did you write a letter directed to defendant Barnowski at the United States Penitentiary at Leavenworth, Kansas, under date of May 3, 1939, with a request of two hundred dollars to further finance his appeal? A. I believe I did. Q. Is it true that the legal time limit for filing of appeal expired March 18, 1939? A. I don't remember the dates that this took place. Q. Is it true that you never filed a notice of appeal in case No. 24,742? A. I believe that is right."

Curran's claimed attitude towards petitioner is that, though he was paid nothing but $25.00, it was his intent to do everything for his client. Yet, though claiming grounds for an appeal, he failed to do the simple thing of preparing one page of writing and filing a notice of appeal. By this failure it became certain that no other attorney could take an appeal and petitioner's conviction could be urged before the Michigan State Bar Association. The evidence before me does not warrant the approval of Curran's conduct given him by the Tenth Circuit.

The Warden also relies on the decision of this Ninth Circuit in McDonald v. Johnston, 9 Cir., 157 F.2d 275. There the court reversed the decision of District Judge St. Sure, who had ordered the petitioner's release and return to Michigan for further proceedings. The ground of the reversal is that the petition failed to state a cause for the writ. The petition was in the same confusion of intermingled allegations and incorporation of testimony as the original petition before me. Nowhere does it claim, as in the amended petition, that it was the failure of Curran to advise the court that his client was prosecuting him and that it was the failure of the court to make certain the nature of the disagreement which constituted the gravamen of the failure to create the constitutional court.

This is clearly apparent from the following statement in 157 F.2d at page 276, "McDonald relies on Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. There the trial court, over Glasser's objection, appointed an attorney whom Glasser had employed for himself as attorney for Glasser's codefendant, whose interests conflicted with those of Glasser. In the case at bar, Attorney Curran was employed by both defendants (McDonald and Barnowski). No attorney was appointed for either of them. It was not claimed or suggested that their interests conflicted. Hence the Glasser case has no relevancy here."

If this is what the petition before that court presented as its ground for relief, that decision is correct. The exact contrary appears in the amended petition before me. No contention is here made of a conflict of interest between petitioner and his codefendant. As stated, the Glasser case is controlling because of a deeper adverse interest between attorney and client, a personal interest of the attorney under prosecution by his client.

Respecting the order to be made on the conclusion of law that the Warden is holding the petitioner on a commitment on an invalid judgment, because the petitioner has not had a constitutional trial, petitioner contends that it should be that he be dis-

charged absolutely from the custody of the Warden, the agent of the Attorney General. The law is clearly to the contrary. This is not a case in which it is claimed that the indictment is invalid. It still exists. Petitioner's contention that he has never been tried on the indictment has been sustained. He fails to distinguish between jurisdiction to conduct the particular trial and the jurisdiction obtained by the court through the indictment. The latter jurisdiction remains and if the United States be so advised it may require the court to exercise its jurisdiction to conduct a trial under the indictment. Under petitioner's contention, this would be his first trial under the indictment.

That the United States has such right to try the accused where a first trial has been held without the court's jurisdiction to conduct it is apparent from the following cases, of which the leading case is In re Bonner, 151 U.S. 242, 262, 14 S.Ct. 323, 327, 38 L.Ed. 149. There the Court held, as is held of the judgment after the trial here, that a judgment sentencing to a state penitentiary a man adjudged guilty of a federal offense, was without the jurisdiction of the court rendering it. The petitioner contended, as does petitioner here, that he should be discharged "absolutely" because of such lack of jurisdiction to render the judgment. The Court held to the contrary and in ordering the release of the petitioner from the custody of the Warden, stated, "but without prejudice to the right of the United States to take any lawful measures to have the petitioner sentenced in accordance with the law upon the verdict against him."

In Robinson v. United States, 50 F.Supp. 774, Robinson, who had a life sentence for kidnapping, petitioned for the writ of habeas corpus. It was held, as here, that the judgment was invalid because there had been no trial with the effective assistance of counsel. The district court ordered Robinson returned to the Kentucky court, where the indictment was pending, for further proceedings. He was tried on that indictment and sentenced to be hanged. Robinson v. United States, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944.

In King v. United States, 69 App.D.C. 10, 98 F.2d 291, 295, it is held that an accused who attacks a judgment sentencing him for a term of years and has it set aside, may be again convicted and sentenced for life. There is no difference between an attack on appeal and on habeas corpus. The indictment is still there on which the trial is to be held. The same was held in McCleary v. Hudspeth, 10 Cir., 124 F.2d 445, 447, a habeas corpus proceeding. See also, In re Medley, 134 U.S. 160, 170, 10 S.Ct. 384, 33 L.Ed. 835, where the release in the habeas corpus proceeding was delayed for ten days with notice to the Attorney General so that he would be free to take further proceedings if so advised.

Whatever may have been petitioner's past record, he conducted his case here with unusual candor and intellectual integrity. During a colloquy it appeared that although he is now entitled to petition for release on parole, he was seeking release on the writ under the mistaken impression that it would be "absolute" and that he could not be retried. Attorney Karesh, who represented the Warden with ability and vigor, with his usual fairness to his opponent was careful to advise petitioner that, if petitioner succeeded before me, in all likelihood he would be retried.

### Order of Discharge

The respondent Warden is ordered to release petitioner from his custody. This order is stayed for thirty days to enable the Attorney General to take such action with respect to further prosecution on the above indictment as he may be advised.