SWOPE, Warden, v. McDONALD.

No. 12044.

United States Court of Appeals
Ninth Circuit.

April 5, 1949.

Rehearing Denied May 13, 1949.

Frank J. Hennessy, U.S.Atty. and Joseph Karesh, Asst.U.S.Atty., both of San Francisco, Cal., for appellant.

Walter McDonald, in pro. per., and Wayne M. Collins, of San Francisco, Cal., for appellee.

Before MATHEWS, STEPHENS, HEALY, BONE, ORR, and POPE, Circuit Judges, and FEE, District Judge.

HEALY, Circuit Judge.

This is an appeal by the warden of Alcatraz prison from an order, granted by Judge Denman of this court, directing the discharge of appellee McDonald from custody on his petition for habeas corpus. 79 F. Supp. 30.

On the same claim of deprival of counsel and on substantially the same showing as is made here the Court of Appeals of the Tenth Circuit has twice held against the petitioner, McDonald v. Hudspeth, 113 F. 2d 984; McDonald v. Hudspeth, 129 F.2d 196, in each of which cases certiorari was denied, 311 U. S. 683, 61 S. Ct. 64; 85 L. Ed. 441; 317 U. S. 665, 63 S. Ct. 75, 87 L. Ed. 535, rehearing denied 317 U. S. 709, 63 S. Ct. 157, 87 L. Ed. 565. This court in turn, on the identical evidence now presented, reached the conclusion that the petitioner is not entitled to his release. Johnston v. McDonald, 9 Cir., 157 F.2d 275. The Supreme Court again denied review, McDonald v. Johnston, 329 U. S. 795, 67 S. Ct. 480, 91 L.Ed. 680. The Sixth Circuit, also, in a proceeding by McDonald to vacate the judgment of conviction, rejected the claim here asserted. McDonald v. United States, 166 F.2d 323. Normally we would, without further discussion, reverse on the authority of these repeated decisions, cf. Salinger v. Loisel, 265 U. S. 224, 232, 44 S.Ct. 519, 68 L.Ed. 989, but instead the full remaining complement of the court, plus Judge Fee, now sitting here, has been assembled to consider the appeal; and the matter has once more received such attention as we are capable of giving it.

Petitioner's contention is, as heretofore, that he was denied the effective assistance of counsel in making his defense upon a charge of which he was convicted in the federal court for the eastern district of Michigan. In that case petitioner and one Barnowski were accused of the armed robbery of a bank. The evidence taken at their trial is not contained in the record. All the facts offered in support of the petition are such as may be gathered from the depositions of three participants in the trial, namely, Judge Moinet who presided,

District Attorney Babcock who prosecuted the case, and a lawyer named Curran, a member of the Michigan and federal bars, who conducted the defense. McDonald himself did not testify in support of his petition. The depositions introduced were taken in the course of the second of the two habeas corpus proceedings prosecuted in the Tenth Circuit and were before the court in that proceeding. Since the evidence they afford has already been evaluated by this and at least one other court of appeals, and presumably by the Supreme Court in the several instances in which certiorari was denied, we need summarize them only to the extent necessary to clarify the issue.

Curran's deposition discloses that he was acquainted with petitioner for a year prior to the bank robbery charge and had represented him in two cases. Upon the arrest of petitioner and Barnowski in the spring of 1938 he was called in by both and endeavored at the beginning to effect their release from custody, and at their request appeared for them on their arraignment. His testimony is that, despite strained relations developing between his clients and himself, it was his understanding that he was to conduct their defense; and this he was willing to do although they had not paid his fee. It was not until the opening of the trial, January 24, 1939, that the petitioner indicated to Curran that he did not want Curran to represent him, whereupon Curran, who had two weeks before formally entered his appearance, advised petitioner that he could not and would not ask to be discharged from the case but that if petitioner desired his discharge he could so advise the court.

The breach, if so we may term it, arose out of the following circumstance related by Curran. In the interim between indictment and trial McDonald and Barnowski remained in confinement at a detention farm, being unable to supply bond. In October 1938 they complained to Curran of their being held so long and wanted him to obtain thier release on habeas corpus, saying that the government had no evidence against them and did not want to take time to try the case.[1] Curran advised that if

---

[1] The men had wired Curran asking him to come to Milan, where they were de-

tained, and they paid him at the time $25 to cover the expenses of the trip and to

this were true a speedy trial could be secured through habeas corpus proceedings. He conferred with Judge Moinet and with the district attorney and was informed that the delay was due entirely to the congestion of cases having priority on the criminal calendar, but that the accused men would be tried as soon as possible 'and immediately after prior pending cases were disposed of, perhaps within a period of thirty days. From the information given him Curran concluded that an application for the writ would be futile, and he advised his clients of the situation and of his conclusion, with the result that they lodged a complaint with the Michigan Bar Association predicated on his failure to apply for the writ. Their complaint remained undisposed of until some weeks after the close of the trial, when it was dismissed.

Returning to the opening morning of the trial, McDonald, according to Curran, arose and informed the court that there had been some differences between Curran and himself; that he and Barnowski had filed a complaint with the Bar Association based on the fact that Curran had not obtained a writ of habeas corpus for them; and that they did not want Curran to proceed with their case. The judge, upon ascertaining that Curran had filed an appearance, stated that the trial would go on.

Judge Moinet's version of this incident differs from Curran's. His testimony is that after the jury was impaneled McDonald said merely that he had some little disagreement with his attorney, the nature of which was not told him either by McDonald or by Curran. The discrepancy is difficult to resolve. We note that McDonald's original petition in the present proceeding, obviously prepared by himself, is corroborative of Curran's testimony on the point. In relating the events of that morning the petition alleged the following: "Whereupon petitioner arose and personally requested Judge Moinet in open court for other and unprejudiced counsel. * * * Petitioner explained that this said attorney, at that instant was awaiting trial before the

grievance committee of the Michigan State Bar for professional misconduct, and that petitioner was the prosecuting witness."

An amended petition, evidently prepared by some third person and adopted by the petitioner, negatives, or rather alleges the contrary of, the second sentence of the allegation quoted. Seemingly the original averments stated one of those "relevant facts of the significance of which the petitioner was unaware," so that, on being made aware of its significance, he undertook to alter the fact. However this may be it remains true that when McDonald was operating, so to speak, under his own steam, he averred that he had specifically informed Judge Moinet of the existence and pendency of his complaint.

[1] For present purposes we think it makes no difference whose recollection of the incident, Moinet's or Curran's, is at fault. Whether Judge Moinet was informed of the pendency of the complaint and in that knowledge ordered the trial to proceed, or whether he was not informed and failed to inquire with the result that the trial went on, in neither event does it follow that McDonald was denied the effective assistance of counsel in the constitutional sense. That problem rests on its own bottom and should be determined realistically in the light of the facts. Certainly Judge Moinet, in the crowded condition of the calendar, was not obliged to halt the trial because the defendants were dissatisfied with Curran and desired the court to appoint other counsel.[2] Cf. United States v. Mitchell, 2 Cir., 137 F.2d 1006, affirmed on rehearing, 2 Cir., 138 F.2d 831, certiorari denied, Mitchell v. United States, 321 U. S. 794, 64 S. Ct. 785, 88 L. Ed. 1083; United States v. Gutterman, 2 Cir., 147 F.2d 540, 157 A.L.R. 1221. Some breach of genuine gravity in the attorney-client relationship must appear before discontinuance of the trial could be thought essential. That such a situation had in fact developed is the proposition urged upon us. The argument is that because the complaint was pending there existed a conflict of interest between

---

apply on past services for which he had received nothing. The trip to Milan consumed "a good half day."

[2] Of course McDonald would have been entitled to insist on his being accorded the right to proceed as his own counsel, but that is not what he asked for.

Curran and his clients of a nature so serious as to deprive the latter of effective representation and the court of jurisdiction.

The situation is said to be comparable with the one which arose in Glasser v. United States, 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680, and the petitioner insists that the Glasser holding requires an affirmance of his discharge from custody. Before turning to that decision it may be well to explore the precise nature and supposed consequences of the interest Curran is assumed to have had adverse to his clients. Curran, we are told, would be spared the further prosecution of the malpractice charge if the clients who had preferred it were sent to the penitentiary, hence it was to his interest to have them convicted. The clients, realizing this condition of affairs, would be in so apprehensive a state of mind that they would refrain from imparting to Curran information essential to their defense in the fear that he might use it to their disadvantage.

Unfortunately we are obliged to appraise the worth of these philosophical assumptions in the cold light of the facts. The assumption as regards Curran himself borders on the grotesque. The complaint against him was so palpably groundless that its prosecution could not have given him concern. That this was so appears not only from his own testimony but from that of District Attorney Babcock and Judge Moinet. Their depositions make it clear that there was no basis in fact for the assertions made by McDonald and Barnowski at the time they called Curran into consultation with the view to his obtaining their release on habeas corpus; and that the sole reason their case had not been brought on for trial was because of an unavoidable congestion of prior causes pending on the calendar. Judge Moinet's deposition sets out letters written him by the accused men in September of 1938. In these letters the two, particularly Barnowski, voiced the same grievance as that shortly afterwards made to Curran, namely that the district attorney was without evidence identifying them as the bank robbers and had unjustifiably failed either to release or try them. The judge himself made inquiry and learned, as did Curran a little later on, that the assertions were without foundation.[3] Further, Judge Moinet's observation, as expressed in his testimony, was that on the trial Curran had used his best efforts on behalf of his clients. The judge commented on the vigor and competence of the attorney's conduct of the defense, on his capable examination and cross examination of the witnesses, and on his thorough argument of the case to the jury.

As regards the withholding by the accused men of essential information, there is no hint of it in the record. If it were the fact that McDonald was so distrustful of Curran's fidelity that he kept back the names of witnesses or other needful information, why did he not so testify at the hearing on his petition? The circumstance was one peculiarly within his knowledge and on him rested the burden of proof. Even if he had so testified his own conduct would belie him. Immediately after their conviction McDonald and Barnowski procured Curran to present and argue on their behalf motions for a new trial, and through Barnowski paid him a hundred dollars as his fee for that service.[4] The malpractice charge before the grievance committee was still pending and undisposed of when the motions were interposed and argued, that is to say, Curran's interest supposedly adverse to McDonald and Barnowski was operative in unimpaired vigor when the two enlisted his services in their effort to obtain a second hearing.

Much is said in Judge Denman's opinion concerning negligence or fault on Curran's part in preparing for the trial, specifically in respect of the attorney's supposed failure to secure the presence of and to interview witnesses for the defense. We have

---

[3] The record in this respect leaves one with the conviction that what the accused men wanted was, not a speedy trial, but outright release on the ground that their constitutional right to a speedy trial had already been denied them. Such was Judge Moinet's impression, also.

[4] The three also conferred in respect to Curran's taking an appeal, the project being based on the assumption that Barnowski's relatives would advance the costs thereof plus Curran's fee. The requisite advance was not made and no appeal was taken.

painstakingly scrutinized the record and are not able to find justification for the criticism. On this aspect it is important to recall the nature of the charge against McDonald and Barnowski and the narrow limitation of their possible defense. A heinous crime had been committed. Two armed bandits had robbed the Farmington Bank, apparently while the day's business was in progress and employees and customers were present. The issue limited itself to the identification of the accused men as the bandits. Their position was, as indicated to Curran, that there was little to discuss, that they knew nothing about the robbery. In short, apart from doubts as to identification which might develop on the examination or cross-examination of the witnesses for the government, their defense was in the nature of an alibi. They informed Curran that there were witnesses procurable who could testify to their presence elsewhere, and he says he obtained subpenas for some of those named, and that others appeared voluntarily.[5] There is no evidence at all that Curran failed to interview defense witnesses prior to their testifying nor is there reason to believe that he did not have ample opportunity to do that while the trial was in progress. Judge Moinet, who had taken extensive notes, says that under the direction of Curran eight witnesses testified on behalf of the defendants relative to the latter's whereabouts upon the date of the robbery at or about the hour the robbery occurred. We are not able to find from the record that any witness important to the defense did not in fact appear and testify.

We turn finally to Glasser v. United States, supra. In that case the trial court, over objection, had appointed Glasser's attorney, Stewart, to represent also an alleged co-conspirator, who turned out to be much more deeply embroiled than Glasser. In considering the claim of prejudice resulting.the Court indulged no a priori assumptions. It surveyed the entire record and found there persuasive evidence that the appointment of Stewart as counsel for the alleged co-conspirator had in fact embarrassed and inhibited Stewart's conduct of Glasser's defense. It pointed to numerous and critical instances in which Stewart found himself unable faithfully to serve two masters. We see no resemblance between the situation found to obtain in that case and that developed here.

We conclude, as before, that petitioner was not denied the effective assistance of counsel, but that on the contrary he was effectively and conscientiously represented.

The judgment is reversed with directions to remand the petitioner to custody.

---

[5] The intimation thrown out by Judge Denman that the accused men declined or failed to give Curran the names of witnesses desired is not supported by the record.