William BROWN, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 14389.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 6, 1958.

Decided Feb. 5, 1959.

Mr. Robert M. Scott, Washington, D. C. (appointed by this Court), for appellant.

Mr. John W. Warner, Jr., Asst. U. S. Atty., for appellee. Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Victor Caputy and Nathan J. Paulson, Asst. U. S. Attys., were on the brief, for appellee. Mr. Lewis Carroll, Asst. U. S. Atty., entered an appearance for appellee.

Before PRETTYMAN, Chief Judge, and EDGERTON, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting en banc.

PRETTYMAN, Chief Judge, announced the judgment and division of the court as follows:

The judgment of conviction is affirmed. Judges PRETTYMAN, WILBUR K. MILLER, DANAHER, BASTIAN and BURGER vote to affirm. Judges EDGERTON, BAZELON, FAHY and WASHINGTON vote to reverse and remand for a new trial. Judge MILLER files an opinion in which Judges PRETTYMAN, DANAHER and BASTIAN concur. Judge BURGER files an opinion in which he concurs in affirming the conviction. Judge WASHINGTON files a dissenting opinion in which Judges EDGERTON, BAZELON and FAHY join. Judge BAZELON files a separate opinion in which he joins in Judge WASHINGTON'S dissent.

WILBUR K. MILLER, Circuit Judge, with whom PRETTYMAN, Chief Judge, and DANAHER and BASTIAN, Circuit Judges, concur.

The appellant, William Brown, Jr., was indicted in seven counts: one for simple assault, one for assault with intent to kill, one for housebreaking, and four for assault with a dangerous weapon.

At the trial it appeared that, in four different episodes of violence, the appellant wounded three different persons

during one turbulent evening. This was amply shown by the testimony of his victims and certain other eyewitnesses who were not hurt. In addition, Brown took the stand in his own behalf and testified rather freely and frankly, substantially showing his own guilt of simple assault and at least one instance of assault with a dangerous weapon.

The jury took him at his word and found him guilty only of the two offenses which he admitted and described: simple assault and assault with a dangerous weapon. Rather surprisingly, in view of the strong evidence of guilt, it acquitted him on all of the other five counts.

Able and ingenious counsel appointed by this court to represent Brown on appeal [1] presents the following questions:

"1. Did the Trial Court err when, upon being informed by appointed counsel for the defendant prior to the commencement of trial and out of the presence of the defendant that 'because I told him that I didn't think he had a chance of beating the thing [indictment], he wants to have a new attorney appointed', the Trial Court failed to advise the defendant that, although counsel had been appointed for him, he had the right to proceed in proper person, could discharge that counsel, and could elect whether he would so proceed or continue with appointed counsel?

"2. Upon the record as a whole, was the defendant denied effective assistance of counsel?"

He contends, of course, that these questions should be answered in the affirmative. The only basis for the two inquiries posed by counsel is the following colloquy, a part of which is quoted in question No. 1, which took place between the trial judge and appellant's trial attorney when the case was called for trial:

"Mr. Mansfield: Your Honor, because I told [the defendant] that I didn't think he had a chance of beating the thing, he wants to have a new attorney appointed.

"The Court: Were you appointed?

"Mr. Mansfield: I was appointed in the first place. I think I can do a good job for him. I can do as good as anybody else could.

"The Court: You mean he doesn't want to plead to anything?

"Mr. Mansfield: The only thing he wants to plead to is the simple assault.

"The Court: All right, let's proceed."

The appellant contends this colloquy required the judge to inform him of his right to defend himself so he might elect to do so if he chose. We observe, however, that Brown did not say to the district judge nor to trial counsel that he wanted to proceed alone and waive the assistance of an attorney. His contention is, then, that it was reversible error not to inform him that he could try his own case, even though he indicated no desire to do so.

■ Appellant's argument might have some validity if a defendant has a constitutional right to dispense with a lawyer and represent himself. We find nothing in the Constitution which confers it, or from which a guaranty of such a right may be inferred.[2] The truth is that the right is statutory in character,[3] and does not rise to the dignity of one conferred and guaranteed by the Constitution.

■■ As Brown did not request the right to act for himself, we conclude that

---

1. He was not the trial counsel.

2. There is a passage in Adams v. United States, 1942, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268, which speaks of that right as "correlative" to the constitutional right to counsel; but the opinion does not say the defendant's right to defend himself is constitutional.

3. 28 U.S.C. § 1654 (1952) is as follows:
"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."
The section is derived from § 35 of the Judiciary Act of 1789, 1 Stat. 92.

**366**

this record presents no issue as to whether his statutory right to do so was violated; for it has been held, correctly we think, that where a defendant fails to expressly assert his statutory right to conduct his own defense he cannot later successfully contend that the right was denied him. United States v. Gutterman, 2 Cir., 1945, 147 F.2d 540, 157 A.L.R. 1221; Mayes v. United States, 8 Cir., 1949, 177 F.2d 505; People v. Ephraim, 1952, 411 Ill. 118, 103 N.E.2d 363.

■■ Moreover, even if Brown had demanded the right to proceed alone (which he did not) and the trial court had not permitted him to dispense with counsel, its error in denying appellant his statutory right would not warrant reversal of the conviction in the absence of a showing that appellant was prejudiced by the refusal. United States v. Cantor, 2 Cir., 1954, 217 F.2d 536. He makes no effort here to demonstrate that he was prejudiced. The only criticism of his appointed counsel is that he told Brown he "didn't think he had a chance of beating the thing." Counsel's pessimism as to the outcome—which was inevitable in view of appellant's factual statements—did not prevent him from wanting to go forward with his delegated duty: "I think I can do a good job for him. I can do as good as anybody else could." Nor did it render him to any extent incompetent, inefficient or ineffective; for acquittal on five counts out of seven amply shows he gave appellant effective assistance. At any rate, we are certain that appellant showed no prejudice.

■ It is also said that the colloquy between court and counsel, which is quoted above, required the presiding judge to inquire of Brown himself whether he was dissatisfied with his appointed counsel and, if so, why. In other words, although his assigned counsel had told the court his client wanted him replaced because of his pessimism as to the result, appellant contends here that the judge committed reversible error by not consulting him personally as to the cause

of his dissatisfaction with his lawyer. But he does not say there was any cause other than that stated by the attorney or that, had he personally been asked, he would have given a different reason.

As was said in United States v. Mitchell, 2 Cir., 1943, 137 F.2d 1006, 1010, "Under these circumstances we think it proper at least to require that the defendant must show his hand." The court also said in that case, at page 1011,— and we adopt the language as appropriate in this case—"In the situation here, where no reason appears in the record for defendant's action [in wanting to dismiss assigned counsel] other than the damaging nature of the case against him, we do not think it was incumbent on the court to search beneath the surface for other grounds."

We cannot suppose that, had he been asked, appellant would have given a different reason for being displeased with his attorney, when he does not suggest there was a different reason which he would have given. Nor can we reverse and remand for a new trial merely to give the appellant the satisfaction of being personally asked why he wanted to dismiss his counsel and have another appointed when, as far as we know or have been informed, he would give no reason except that given by his attorney.

■ The question then becomes whether, in the circumstances here, the attorney's statement of the reason his client wanted to dismiss him was sufficient to require that it be done. We think not. A criminal defendant for whom an attorney has been appointed is not entitled to dismiss him and have a substitute appointed unless he has an adequate reason for requesting the change. The fact that his counsel "didn't think he had a chance of beating the thing" is not such a reason, particularly in view of Brown's version of his own conduct on the night in question. Presumably he told his lawyer substantially what he testified to at the trial; if so, it is not surprising that counsel was pessimistic. Any other attorney appointed, when told the same

story by the appellant, would also have been forced to say in substance, "I do not believe you can beat the thing."

The Gutterman case, supra, is particularly in point. There a criminal defendant had personally indicated to the trial judge his dissatisfaction with assigned counsel because the latter had advised him to plead guilty.[4] On appeal, the majority (composed of Judges Learned Hand and Augustus N. Hand) rejected appellant's contentions that the trial court was compelled (1) to assign him new counsel, and (2) to ask him whether he wanted to proceed without a lawyer. The court, speaking also of its earlier Mitchell case, supra, stated that, "In neither case did it appear that the defendant was really seeking to take over the personal conduct of his defense or that he was doing more than to claim the privilege of changing his counsel because he did not approve of the latter's judgment." 147 F.2d at page 542. Referring to the appellant's claim that his dissatisfaction with assigned counsel based, *inter alia*, on his advice to plead guilty, entitled him to new counsel the court added, at page 542:

> "If a defendant is unable to employ an attorney he must accept such counsel as the court assigns unless he can furnish a better reason for requiring a change than he has given here or unless he chooses to dispense with counsel and undertake his own defense. In the case at bar, when [defendant] found that he could not procure another assignment he availed himself of the services of the excellent lawyer appointed by the court and relied on his objections to counsel in order to upset a verdict though based on overwhelming proof of guilt."

See also Swope v. McDonald, 9 Cir., 1949, 173 F.2d 852, in which the full bench reversed McDonald v. Swope, D.C.N.D. Cal.1948, 79 F.Supp. 30, 35.

Although Brown was at first displeased with his attorney because he disliked his appraisal of the situation, apparently he changed his mind as the trial progressed; for not only did he make no complaint to the court—which he might easily have done—but he also accepted without question the effective aid provided by the attorney whom he had at first criticized. Thus in effect he waived his initial complaint concerning his attorney's judgment. Cf. Moore v. United States, 1955, 95 U.S.App.D.C. 92, 220 F.2d 198.

Conceding for the discussion, without deciding, that the judge should not have accepted counsel's version of the reason for Brown's displeasure with him, but should have asked the appellant himself if he had any other reason for being dissatisfied with his appointed counsel, the question remains whether the court's failure to do so was so prejudicial as to require reversal.

No prejudice whatever has been demonstrated. As we have said, appellant does not assert that, had he been asked, he would have given any reason for dissatisfaction other than that given by his attorney. And the verdict was much more favorable than appellant could reasonably have expected.

What has been said sufficiently disposes of appellant's contention that he was denied the effective assistance of counsel. In a practical view of the situation, Brown's appeal is without substance.

Affirmed.

BURGER, Circuit Judge (concurring in part).

In concurring in affirming the conviction I approach the problem by treating as the central issue the question of what the District Court must do if a defendant personally states to the court that he desires to have a new attorney appointed because his court appointed counsel thought he could not win an acquittal. It seems to me that in those circum-

---

4. The defendant had said to the trial judge, "If I am going to plead guilty I might as well defend myself."

stances the court has discretion to refuse to dismiss counsel for no court has held pessimism of counsel, standing alone, is a ground for dismissing counsel.[1] On this record it is fair to say that the trial court was made aware of the nature of appellant's objections to his counsel, unless we assume that counsel breached his obligations to his client by misrepresenting in open court his client's views; this is an assumption I would be unwilling to make. I conclude that it was not an abuse of discretion in the circumstances here presented to direct counsel to go forward with the case—a course of conduct to which appellant made no further objection. We cannot ignore the fact that appellant was acquitted of the more serious charges against him; indeed the skill and vigor of the defense afforded him is attested to by this result—a somewhat surprising one in view of the evidence against appellant.

The issue here is not whether an accused has a right to try his own case in proper person; nor is the issue whether an accused must, in all circumstances, be informed explicitly by the court that he had a right to proceed as his own counsel. The heart of the matter is the scope of the discretion of the trial court when an objection to counsel is made known. That discretion must be controlled by the nature of the reasons for an asserted objection to the counsel. If the reason is not a valid one, the court may—as it properly did in the peculiar circumstances of this case—overrule the objection. Cf. United States v. Gutterman, 2 Cir., 1945, 147 F.2d 540, 157 A.L.R. 1221. On the other hand if the reason is prima facie a valid one or if no reason is expressed at all, then the question arises as to the duty of the trial judge. The dissenting opinion seems to me to state correctly, in part, the rule which ought to govern when an apparently valid reason for objection is made known or when a naked objection is raised without explanation or reasons in support.

Since a rule of this court, binding in this jurisdiction, flows from the combined opinions in this case, it will be helpful to restate the basic elements on which, as I see it, a majority of the court—if indeed not all members of the court—agree.

Two cases of the Second Circuit are in point, United States v. Gutterman, supra, and United States v. Mitchell;[2] both were decided by a vote of 2–1, with Judge Frank in dissent. Adoption of the Mitchell case majority view would compel us to affirm because there facts much more favorable to appellant than those presented here failed to win reversal.[3] Judge Frank's dissent in that case argued only that the trial judge erred because he cut off and prevented "defendant's request from being articulated so that it could be ruled on informedly."[4] Even accepting Judge Frank's view would not lead to reversal of this case since here the court did not "prevent defendant's request from being articulated so that it could be ruled on informedly." The court here ruled directly on an informed basis unless, as I suggested, we assume that trial counsel speaking in open court and on the record did not faithfully state his client's position.

1. Cf. Shepherd v. Hunter, 10 Cir., 1947, 163 F.2d 872 (defendant pleaded guilty upon advice of counsel; later attack sentence as invalid because he lacked effective assistance of counsel); Beaney, The Right to Counsel in American Courts 59–60 (1955).

2. 137 F.2d 1006, opinion adhered to on rehearing 2 Cir., 1943, 138 F.2d 381, certiorari denied 1944, 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083.

3. In the Mitchell case the record showed quite a different fact situation:
"'Defendant Mitchell addressed the Court and stated "I would like the dismissal of this attorney. I am within my rights." To this the court said: "I have assigned him to represent you," whereupon defendant said: "I refuse to accept this man as my attorney." Then the court replied: "Sit down. The Jury will disregard this demonstration."'" 137 F.2d at page 1010.

4. 137 F.2d at page 1012.

I would not agree, without some qualification, that a court cannot assign counsel without consent of the accused. It is axiomatic that more than the rights of an accused are involved in a criminal case. In some circumstances, for example where an indictment covers such complex questions of law and fact that the court thinks the accused unable to understand their import, an amicus curiae could properly be appointed without the accused's consent.[5] The accused should, however, still be permitted to present his own case without reference to what is presented by the amicus curiae. Vindication of the processes of justice would require such a procedure in some cases.

I see common agreement in Judge Miller's opinion and in Judge Washington's dissent on this: that when, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. If the reasons are made known to the court, the court may rule without more. If no reasons are stated, the court then has a duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known. Limited only by the necessity to ascertain the *basis* of the objection and then to rule on the *reasons* rather than on a naked request for new counsel, the trial court must be allowed very wide discretion. Delay in trial at the "eleventh hour" when the court, witnesses, jury, and all the machinery have been readied, cannot be countenanced solely because the client thinks his lawyer is not sufficiently optimistic.

A lawyer has a duty to give the accused an honest appraisal of his case. This is commanded in part because without it the accused cannot make an informed judgment as to whether he should enter a plea of guilty—a course of action frequently to the advantage of an accused. The constitutional right to counsel does not mean counsel who will be optimistic in his private appraisal of the evidence and his advice to the accused. Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism. Optimism in the face of the known facts here would have been foolhardy indeed and on the record before us counsel gave an objective appraisal and no one seems to contend that appraisal prevented his giving appellant a very effective defense. Any suggestion that the appellant was forced to go to trial with counsel he had "repudiated" is simply not supported by the record in this case.

WASHINGTON, Circuit Judge, with whom EDGERTON, BAZELON and FAHY, Circuit Judges, join (dissenting).

When appellant's case was called for trial, his court-appointed lawyer approached the bench [1] and engaged in the following colloquy with the judge:

"Mr. Mansfield: Your Honor, because I told [the defendant] that I didn't think he had a chance of beating the thing, he wants to have a new attorney appointed.

"The Court: Were you appointed?

"Mr. Mansfield: I was appointed in the first place. I think I can do a good job for him. I can do as good as anybody else could.

"The Court: You mean he doesn't want to plead to anything?

"Mr. Mansfield: The only thing he wants to plead to is the simple assault.

"The Court: All right, let's proceed."

The trial proceeded to completion with the appointed lawyer conducting the de-

5. Cf. Justice Douglas' dissent in Bute v. People of State of Illinois, 1948, 333 U.S. 640, 680–681, 68 S.Ct. 763, 92 L.Ed. 986; Gray v. Ellis, 5 Cir., 1958, 257 F.2d 159.

1. It appears that the jury was in the courtroom, and accordingly the colloquy was no doubt conducted in a low voice. We cannot assume that the accused heard what was said: the contrary must have been the case.

fense. After judgment of conviction, this appeal followed, presented by an attorney appointed by this court.

We think the trial court erred when it directed counsel to proceed, without consulting the accused or asking him the basis for his attitude towards counsel, or even whether his attitude had been correctly reported, and without advising him of his right to proceed alone if he insisted.

The trial judge has much discretionary authority in situations of the present sort. But the exercise of that authority must be on an informed basis. And the accused—who presumably is competent to stand trial—must be treated as a reasonably intelligent human being, entitled to be advised of his rights and to make choices on the basis of that advice. Interrogation of the accused in this case might have revealed a legitimate basis for dissatisfaction with counsel: in that event, appointment of new counsel might have been necessary. Or it might have revealed that the defendant was simply trying to create delay. Other possibilities can readily be imagined. Whatever the court's interrogation may have developed, any solution thoughtfully and reasonably decided upon by the court, after the accused had been advised of his rights and given an opportunity to express himself, would carry at least a prima facie imprint of validity. Cf. Washington v. United States, 1954, 94 U.S.App.D.C. 266, 214 F.2d 876. Here, however, there was no such process: the defendant was compelled to go to trial with counsel whom he had repudiated, as the court knew. No explanation was given to the accused of his right to proceed *in propria persona,* and of the disadvantages of such a course. Clearly, there was not the "free choice by a self-determining individual" of which the Supreme Court spoke in Adams v. United

States, 1942, 317 U.S. 269, at page 281, 63 S.Ct. 236, at page 243, 87 L.Ed. 268.

Over a hundred years ago, a great English trial judge (Mr. Justice Erle) said: "I do not think that I have any authority to assign counsel to a prisoner without his consent." Reg. v. Yscuado, 6 Cox Crim.Cases 386, 387 (1854). American trial judges are subject to the same limitation, at least in dealing with competent adults and with cases of the ordinary sort. Consent is and must remain the basis of assigning counsel to indigents accused of crime. Consent originally given is not irrevocable—though we do not question the power of the District Court to conduct its proceedings free of obstruction and delaying tactics. But it must apply the same rules to indigents as to persons of means: it cannot force an indigent into a trial with repudiated counsel simply because he is an indigent and has had counsel appointed for him by the court.

For these reasons, the judgment should be reversed, and the case remanded for a new trial.

BAZELON, Circuit Judge.

I join fully in Judge WASHINGTON'S opinion. I would only add that to the constitutional right to assistance of counsel there is a "correlative right to dispense with a lawyer's help * * *." Adams v. United States, 1942, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268. Hence when it appeared before the trial started that appellant wished to dispense with his appointed lawyer, it was incumbent on the judge to advise appellant of his right to proceed *in propria persona* and of the disadvantages of such a course. This information would have been essential for an intelligent and binding election whether to retain the lawyer or conduct his own defense.