214 So.2d 589 (1968)
James McArthur ARMSTRONG
v.
STATE of Mississippi.
No. 44638.
Supreme Court of Mississippi.
October 7, 1968.
Rehearing Denied October 28, 1968.
*590 Smith & Smith, Corinth, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice:
Appellant, James McArthur Armstrong, twenty-four years of age, was indicted and tried on a charge of murder in the Circuit Court of Alcorn County, Mississippi. He was convicted of manslaughter, and after defendant's motion for a new trial was overruled, and final judgment entered, the court sentenced the defendant to serve a term of twenty years in the state penitentiary. The defendant appealed to this Court.
The facts and circumstances leading up to appellant's conviction are as follows. Mr. Massengill, a bachelor, lived on the east side of U.S. Highway 45, approximately halfway between Corinth and Booneville, Mississippi. He had lived at this place for several years with his sister; however, his sister had recently been transferred to a nursing home because of illness, and on *591 May 16, 1966, the date of his death, he was living alone. He was sixty-six years of age.
On the morning of May 17, 1966, two of his sisters, Mrs. Mildred Lusk and Mrs. Ethel Wren, came to visit him at his home in Rienzi. They discovered his body on the floor in his bedroom, and immediately went across the street to the Bethlehem Truck Stop and notified George Mason and Robert Lyons. The police officers were notified immediately, and since the defendant was absent from his place of employment at the service station as a service station attendant, and since the officers were told that Massengill's car had gone down the highway, the highway patrolmen and officers in the adjacent counties were notified by the authorities to be on "lookout" for James McArthur Armstrong. The sheriff of Prentiss County received the call and went to the home of a relative of James Armstrong, where Armstrong was found and taken into custody. He was then taken to the Bethlehem Truck Stop, where he was turned over to Sheriff Wilbanks of Alcorn County.
After the defendant was arrested, the sheriff of Prentiss County asked him if he killed Mr. Massengill, and he said, "I did."
A large crowd had gathered at the truck stop, and the sheriffs of Prentiss and Alcorn Counties were apprehensive for the safety of the prisoner; nevertheless, an investigator for the highway patrol took the defendant to the scene where the body of the deceased had been found. The defendant again confessed to the highway patrol officers that he killed the deceased with an iron pipe. He stated that he took the automobile belonging to the deceased, and drove it to a nightclub and persuaded a young woman to go with him. He said he threw the pipe and a pistol belonging to the deceased out of the automobile into Tuscumbia Bottom. The officers took the defendant to the place where he claimed to have thrown the pipe and pistol. A search was made for the weapons, but they were not found. He told the officers where they would find the automobile belonging to the deceased. The officers recovered the automobile and obtained fingerprints from it was proved to be the fingerprints of the defendant.
Later the defendant confessed to another highway patrol officer in the presence of several other officers. The defendant gave the officer a shirt which had blood on it. The county attorney took a statement from the defendant on a tape recorder, but the recorder did not properly record, and the statement was inaudible. The county attorney then took a written statement from the defendant.
An objection was made to the introduction into evidence of various statements, whereupon the trial judge proceeded to hear the evidence out of the presence of the jury. The officers testified in each instance (except as to the first statement to the sheriff of Prentiss County) that the officers had advised the prisoner that he was not required to make a statement and that if he made a statement it could be used against him in a court of law; that he was entitled to have a lawyer; and that if he could not employ a lawyer the State would furnish him one. They testified that he said he did not want a lawyer, and that his statement was freely and voluntarily given.
The defendant took the stand and admitted that he made the statement. He admitted that he was not threatened nor promised any immunity by the officers, but said he did not remember that the officers had warned him as to his constitutional rights. He said that he made the statements because his wife and baby had been threatened, because he was afraid, and because he had blood on his shirt.
After the trial judge, in the absence of the jury, had heard all of the testimony with reference to the admissibility of the confession, he ruled that the confession to the sheriff of Prentiss County was inadmissible, because the prisoner was not warned as to his constitutional rights. He *592 would not permit the introduction of the confession made at the truck stop because of the attitude of the crowd gathered there, nor would he permit the introduction of the confession taken the same night at the courthouse. The court did, however, permit the confessions made the next morning and the next afternoon. These confessions were permitted to be given in evidence to the jury. The testimony of the young lady who accompanied the defendant was admitted in evidence. She testified that the defendant told her that he hit the deceased with an iron pipe and that he was dead. Defendant also told Mr. and Mrs. Strickland that he had "hit Mr. Massengill with an iron pipe."
The testimony in this case is overwhelming, and yet, taking all the evidence as a whole, the jury could very well, as reasonable men, reach a conclusion that the entire facts with reference to the death of Mr. Massengill had not been revealed.
The defendant said that he went over to take a note from a negro to Mr. Massengill, and found that Mr. George Mason had just hit Mr. Massengill with a tire tool; that Mr. Mason threatened the defendant's wife and child, and told him to take Mr. Massengill's automobile and leave; and that Mr. Mason was angry with Mr. Massengill about a rental check. He said he got the blood on this shirt while trying to get the key for the automobile from Mr. Massengill's pocket. He said he ran away because he was afraid. He was corroborated in part of his testimony as to the note given to him to be delivered to Massengill and also as to the controversy between Mr. Massengill and Mr. Mason with reference to the government rental check.
We are of the opinion that there is ample testimony to sustain the verdict of manslaughter returned by the jury.

I.
We are convinced that the ruling of the trial judge with reference to the admission of the confession and the testimony was correct. In fact, the admissions of the defendant on the preliminary hearing on the witness stand were sufficient to permit the introduction of the confessions admitted in evidence by the trial judge.
The mere fact that one has once confessed to an officer who did not warn him of his constitutional rights does not preclude the admission of a later confession which was freely and voluntarily given, after proper warning, unless it appears that the second confession was brought about as the result of having given the first confession, or under the same influence which caused the first confession. White v. State, 129 Miss. 182, 91 So. 903, 24 A.L.R. 699 (1922).
This Court held as early as 1844, in the case of Peter v. State, 12 Miss. (4 S. & M.) 31 (1844), that there was a presumption of law that a confession obtained by the influence of a threat or a promise, once made, continues to operate unless it is shown that a subsequent confession was not made under the influence of the previous threat or promise. This rule has been carefully guarded by this Court through the years.[1]
On the other hand, where it is shown that a subsequent confession was made after proper warning and was free from the influence which might have prompted the former confession, such subsequent confession is admissible in evidence. Simmons v. State, 61 Miss. 243 (1883). We are convinced that the confessions admitted into evidence in the instant *593 case were freely and voluntarily given, because the prisoner was properly warned of his constitutional rights. We therefore hold that the confessions were properly admitted in the evidence by the trial judge. We do not consider the holding of the Court in Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967), to be contrary to our holding under the facts shown in the case now before this Court.

II.
The trial judge asked the members of the special venire the question, "Are you opposed to the death penalty under any circumstances?" Several members of the prospective panel answered, "Yes, sir"; whereupon, the trial judge excused the veniremen from serving as jurors without the consent of the defendant. The attorney for the defendant objected to this procedure and moved the court for a new trial. The trial court overruled the objection and all the veniremen who were opposed to the death penalty were released.
The proper method of bringing the death penalty to the attention of the special veniremen is for the trial judge to inform them that they have been summoned as veniremen in a capital case and that a verdict of guilty could result in the infliction of the death penalty. The judge should then ask them if any member of the panel has any conscientious scruples against the infliction of the death penalty, when the law authorizes it, in proper cases, and where the testimony warrants it. If there are those who say that they are opposed to the death penalty, the trial judge should then go further and ask those veniremen, who have answered in the affirmative, whether or not they could, nevertheless, follow the testimony and the instructions of the court and return a verdict of guilty although that verdict could result in the death penalty, if they, being the judges of the weight and worth of the evidence, were convinced of the guilt of the defendant and the circumstances warranted such a verdict. Those who say that they could follow the evidence and the instructions of the court should be retained, and those who cannot follow the instructions of the court should be released. The mere fact that a venireman is opposed to the death penalty does not disqualify him as a juryman, if he can do his duty as a citizen and juror and follow the instructions of the court, and where he is convinced of the defendant's guilt he can convict him although the verdict of the jury may result in the death penalty's being inflicted upon the defendant.
In the instant case, however, releasing the veniremen who were opposed to the death penalty was not prejudicial or harmful to the defendant, because those selected on the jury who did not have any conscientious scruples against the death penalty nevertheless returned a verdict of manslaughter, a verdict which does not require the infliction of the death penalty. Therefore, this error in the instant case is not reversible. See Bragg v. State, 210 So.2d 652 (Miss. 1968); Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), Note 21; Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

III.
The appellant complains that the county attorney was permitted to testify with reference to a confession he took from the defendant. We held above that the confessions were admissible. The question remains: Was it nevertheless improper for the county prosecuting attorney to testify with reference to the confession taken by him?
In the case of Jenkins v. State, 242 Miss. 646, 654, 136 So.2d 580, 583 (1962), we quoted from 70 C.J., Witnesses § 247 (1935), as to the eligibility of a district attorney to be a witness for the State in cases he is prosecuting, and we said that the general rule is that:
"* * * `although a prosecuting attorney is competent to testify, his testifying *594 is not approved by the courts except where it is made necessary by the circumstances of the case, and, if he knows before the trial that he will be a necessary witness, he should withdraw and have other counsel prosecute the case. The propriety of allowing the prosecutor to testify is a matter largely within the trial court's discretion.'"
Under the circumstances in this case, where the county attorney is simply aiding the district attorney in the prosecution, and where the necessity for the testimony was not known at the beginning of the trial, we do not believe that the trial judge abused his discretion in permitting the county attorney to testify.

IV.
We find no error in the method of selecting the jury. The mere fact that there are more jurymen summoned from one supervisor's district than another does not, taken alone, indicate an unfair method of jury selection. § 1766, Miss. Code 1942 Ann. (Supp. 1966); Wiggins v. State, 224 Miss. 414, 80 So.2d 17 (1955).
If a special venire facias is ordered and the jury box is empty, the trial judge is authorized to order the clerk to issue a special venire facias directing the sheriff to summon as many jurors as may be necessary, not less than forty. § 1795, Miss. Code 1942 Ann. (1956); Riley v. State, 208 Miss. 336, 44 So.2d 455 (1950). Moreover, the statutory method of selecting jurors is directory, not mandatory, and unless it is shown that the method used was fraudulent or such a radical departure from the method prescribed by the statute as to be unfair to the defendant or to prevent due process of law, this Court will not reverse. Boyd v. State, 204 So.2d 165 (Miss. 1967); Ladner v. State, 197 So.2d 257 (Miss. 1967); Wiggins v. State, 224 Miss. 414, 80 So.2d 17 (1955).

V.
The appellant's assignment of error with reference to discovery has given this Court considerable concern. The record discloses that after the indictment in this case had been returned by the grand jury, the defendant made a motion requesting the court to require the state "to make available to him and to his attorney * * * an inspection and copy of * * * any books, papers, documents, accounts, letters, photographs, objects or tangible things in possession of the State of Mississippi * * * containing evidence relating to the merits of the action or the defense thereto in the above styled and numbered cause." The trial judge entered an order passing the motion to vacation for study, and when the motion was heard it was overruled and the request was denied. The defendant also requested during the trial that the court require the State to give the attorneys for the defendant a copy of any statements of witnesses who had testified, for the purpose of cross-examination. Thereupon, the judge examined these written statements in camera to determine if there were any inconsistencies with the testimony given on the witness stand, and being convinced that there were no inconsistencies, he overruled the motion.
One of the State's witnesses testified as to the contents of a confession, but this written confession was not introduced into evidence. Photographs of the deceased were introduced into evidence over the objection of the defendant.
The question of discovery of confessions and statements of State's witnesses was first brought to the attention of a trial court in this State by way of an application for subpoena duces tecum. See Eaton v. State, 163 Miss. 130, 140 So. 729 (1932). In the Eaton case, the Court followed the holding in a civil case, Stevens v. Locke, 156 Miss. 182, 125 So. 529 (1930), and held that the petition failed to set out the substance of what was expected to be proved by the transcribed notes requested. The application for subpoena duces tecum was based upon section 744, Mississippi *595 Code 1930, which is now section 1659, Mississippi Code 1942 Annotated (1956).
In the case of Mattox v. State, 243 Miss. 402, 137 So.2d 920, 139 So.2d 653 (1962), on suggestion of error, this Court pointed out that the granting or refusal of an accused's request for the production or inspection of a written statement of a State witness in the prosecutor's possession, allegedly contradicting the testimony of the State's witness, lies within the sound discretion of the trial court, and the Court cited as authority therefor Eaton v. State, supra, and Bellew v. State, 238 Miss. 734, 106 So.2d 146 (1958).
In the Bellew case this Court quoted 23 C.J.S. Criminal Law § 955(2) (b) (a) (1961). A further study of this authority reveals perhaps a more exact rule in the same book at 23 C.J.S. Criminal Law § 1036(1) (1961). The part of this section applicable to the present discussion is:
"In a criminal case the trial court is invested with a broad judicial discretion in allowing or denying an application to require the state to produce documentary evidence for the inspection of accused's counsel during the trial. A party or his counsel may be permitted to inspect documentary or demonstrative evidence before it is admitted, and, in general, it is the duty of counsel to examine proffered exhibits for the purpose of informing himself of the contents and nature of the exhibits, but ordinarily he has no right to inspect a document or article which is in the possession of opposing counsel, but which is not offered in evidence, such as statements and reports contained in the working files of the state. * * *
"On a proper showing an accused can compel production of evidence in possession of the prosecution when it becomes clear during the course of trial that the prosecution has in its possession relevant and material evidence, or writings which are not private memoranda of the prosecuting officer, and which bear on the question of accused's guilt, including documents that are contradictory to the testimony of a prosecution witness or evidence that is favorable to accused; and original worksheets from which reports that went into evidence were compiled may be inspected provided timely demand is made therefor.
* * * * * *
"Production of documents and objects for inspection by accused does not make them automatically in evidence for trial purposes; but where on demand a prior statement made by a witness is produced and inspected by the other side and used in aid of cross-examination, it becomes evidence for both parties and may be offered in evidence by either.
"An application for production and inspection must be timely made * * *."
See also Wharton, Criminal Evidence § 671 (12th ed. 1955).
Two cases are reported from our Court on a request to require the State to present for inspection written confessions of the defendant. In Ray v. State, 213 Miss. 650, 57 So.2d 469 (1952), we held that the motion filed by the defendant was "too general." In Keeton v. State, 175 Miss. 631, 167 So. 68 (1936), we held that the application for a writ of subpoena duces tecum did not set out the substance of what was expected to be proved by the confession. Both of these cases cited as authority the case of Eaton v. State, supra, and Stevens v. Locke, supra. The Court said in Stevens that "the relevancy of evidence should be made to appear in the petition or proof before it would be reversible error to refuse to issue the writ." 156 Miss. at 194-195, 125 So. at 533.
In Sprinkle v. State, 137 Miss. 731, 102 So. 844 (1925), a dying declaration of the victim in a murder case was testified to by the district attorney. He testified that the dying declaration was taken down in shorthand by a stenographer, transcribed, and *596 that he had it in his pocket at the time he was testifying. The attorney for the defendant requested the district attorney to let him see the written statement. Upon refusal of the district attorney to permit the defense attorney to see the statement, the defense counsel requested the court to require the district attorney to let him see the statement. The motion was overruled. On appeal to this Court we held that the court should have permitted the appellant's attorney to examine the statement for use in cross-examination and for evidence if competent and relevant.
A fine discussion on the subject of discovery by a defendant of evidence held by the prosecution is reported in 7 A.L.R.3d 17 (1966). This textwriter points out that the present general rule of law appears to be that the right to discovery by a defendant is a limited right; nevertheless, it is said, there appears to be a definite trend toward the more liberal rule as a result of federal and state court opinions on the subject. The case of Bellew v. State, supra, is sited as being one of the cases holding that discovery in a criminal case is not a matter of right, but is a matter within the sound discretion of the trial court.
A great many judges, law professors and law students have written articles on this subject, in which they contend that there is no good reason why the prosecution should conceal admissible evidence against the accused until it is proffered in court.[2]
In recent cases before the U.S. Supreme Court where it appears that material evidence has been withheld or concealed from the accused in the trial in state cases, that Court has consistently held that failure to divulge evidence favorable to the defendant was a violation of the due process clause of the Fourteenth Amendment. Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957); Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Miller v. Pate, Warden, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); see also Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).
It is becoming increasingly clear from a study of the foregoing authorities that, although the trial judge has discretionary power in determining whether or not tangible evidence in the possession or under the control of the prosecuting attorney should be given to the defendant for his inspection, nevertheless, the defendant should be permitted to inspect tangible evidence which may be used against him or which may be useful in his defense. This does not mean that a defendant may peruse the private files of a prosecuting attorney or examine his private notes. It does mean, however, that the concept of "due process" and "fair trial" requires that material, tangible evidence must not be concealed from the defendant who is accused of crime. There is no good reason why the defendant in a civil case should be entitled to more liberal right to tangible evidence in the possession of his adversary under the authority of section 1659, Mississippi Code 1942 Annotated (1956) than is a person under a serious criminal charge.
We are of the opinion that the trial judge in the instant case should have granted to the defendant the right to inspect the photographs, confessions and other tangible evidence; however, we are of the further opinion that the denial of the right to inspect the requested evidence was *597 not prejudicial to the defendant under the facts here shown. The defendant testified with reference to the scene of the crime and the body of the deceased, and it is apparent that an examination of the photographs could not have aided him in his defense. He testified that he told the officers the very things they said he told them in their evidence, but he said he did not remember that they warned him of his constitutional rights. He said, however that he did this because he had been threatened by another person, not the officers.
We hold, therefore, that the failure of the trial court to permit an inspection of the requested evidence in the instant case was not a reversible error. An early inspection of tangible evidence could not have changed the course of the trial nor have influenced the verdict of the jury.
We find no merit in the other assignments of error, and do not find it necessary to comment on any of them. There is ample evidence in the record to sustain the verdict of the jury, and for that reason, the judgment and sentence of the trial court should be, and they are, hereby affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, BRADY and INZER, JJ., concur.
NOTES
[1] Whitley v. State, 78 Miss. 255, 28 So. 852, 53 L.R.A. 402 (1900); Durham v. State, 47 So. 545 (Miss. 1908); Reason v. State, 94 Miss. 290, 48 So. 820 (1909); Whip v. State, 143 Miss. 757, 109 So. 697 (1926); Boudreaux v. State, 175 Miss. 625, 168 So. 621 (1936); Barnes v. State, 199 Miss. 86, 23 So.2d 405 (1945); Fisher v. State, 145 Miss. 116, 110 So. 361 (1926); Ladner v. State, 231 Miss. 445, 95 So.2d 468 (1957); Lee v. State, 236 Miss. 716, 112 So.2d 254 (1959).
[2] Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L.Rev. 228 (1964); Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? 1963 Washington U.L.Q. 279 (1963); Fletcher, Pretrial Discovery in State Criminal Cases, 12 Stanford L.Rev. 293 (1960); The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant, 74 Yale L.J. 136 (1964); Comment, Developments in the Law  Discovery, 74 Harv.L.Rev. 940 (1961); Louisell, Criminal Discovery: Dilemma Real or Apparent? 49 Calif.L.Rev. 56 (1961); Goldstein, The State and The Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149 (1960).