254 So.2d 891 (1971)
Marvin MYERS, Jr.
v.
STATE of Mississippi.
No. 46404.
Supreme Court of Mississippi.
November 29, 1971.
Farese, Farese, Jones & Farese, Ashland, for appellant.
A.F. Summer, Atty. Gen., by John M. Kinard, Sp. Asst. Atty. Gen., Jackson, for appellee.
ROBERTSON, Justice:
Appellant, Marvin Myers, Jr., was indicted, tried and convicted in the Circuit Court of DeSoto County of the murder of Larry Cox. Inasmuch as the jury found appellant "guilty as charged", the trial judge imposed the death penalty.
*892 Because of appellant's indigence, the trial judge on November 11, 1970, appointed Hon. W.E. Wilroy, Jr. and Hon. William Hagan of the DeSoto County bar to represent appellant, Marvin Myers, Jr., and his younger brother, Arthur Myers, on this indictment. The crime was committed on July 26, 1970, and Wilroy and Hagan were appointed to represent all six defendants at the preliminary hearing on July 28, 1970. Motion for severance was granted and Marvin Myers, Jr., was the first to be tried for this offense. Farese, Farese, Jones and Farese, attorneys of Ashland, Mississippi, entered the case when it was appealed.
In their assignment of errors, appellate counsel listed 37 alleged errors. Only 11 of these alleged errors were briefed and argued on appeal. In disposing of this appeal, it is only necessary for us to discuss and decide three of these assigned errors.
About midway through the trial, during a recess, the court-appointed attorneys, Wilroy and Hagan, made an oral motion for permission to withdraw as counsel for the defendant. This motion was made in the judge's chambers to the trial judge in the presence of the district attorney. The accused, Marvin Myers, Jr., was not present when the motion was made or when it was argued. The six grounds for their motion were listed, as follows:
"1. That at the last recess of this court now taking place the Defendant, Marvin Myers, Jr., accused his counsel of not putting up a good defense, of siding with the law enforcement officers, and of acting to his detriment.
"2. That he has accused his counsel of knowingly letting false, untrue, and flagrant statements go into the record, said statements having been made by the witnesses by the State of Mississippi who have already testified, namely: DeSoto County Deputy Sheriff, Denver Sowell; and Lt. Tom Marshall and Detective E.S. Berkley of the Homicide Bureau of the Memphis Police Department.
"3. That the Defendant has made statements to his counsel in that he desires an opportunity to obtain civil rights attorneys in order to properly defend his case.
"4. That the Defendant, Marvin Myers, Jr., has not in any way cooperated with his counsel, has refused to cooperate, and yet refuses to cooperate; that he upon the occasion of the Justice of the Peace hearing on July 28, 1970, upon questioning by counsel appointed for the preliminary hearing, told one story; that counsel's appointment was confirmed at the regular November, 1970, Term of this Court after the indictment had been returned; and that the Defendant will not tell his counsel anything with which they can use to defend him on his behalf.
"5. That the Defendant vilified and accused his counsel of their failure to properly defend him in front of approximately a half dozen law officers much to the embarrassment of his counsel, proof of which can be put on if the Court deems necessary.
"6. That due to the attitude of noncooperation and aid by the Defendant, counsel for the Defendant has had to do the best they could under the circumstances and feel that they are affording the Defendant the best possible defense necessary due mainly to his attitude, demeanor, and cooperation, which he has given them."
These were serious accusations against appellant made and argued by his own court-appointed counsel out of his presence. He was not given an opportunity to explain his actions or present his views. Even though there might have been no sound basis for his distrust of, and lack of confidence in, his court-appointed attorneys, nevertheless, he was entitled to be heard by the trial judge. This was a very important and crucial stage of the case to the appellant and involved serious charges against him by his own counsel. The trial judge should not have heard this motion *893 to withdraw out of the presence of the defendant-appellant. This was a fatal error and requires a general reversal of the judgment of the trial court.
We also have serious doubts whether the tests imposed in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), were met in the district attorney's examination of prospective jurors as to their religious and conscientious scruples against the imposition of the death penalty. We feel that the trial judge and the district attorney were sincerely trying to comply with Witherspoon. However, the trial judge excused six prospective jurors for cause, with this rather perfunctory and pro forma general questioning of the prospective jurors by the district attorney:
"I say at the outset that the State of Mississippi is demanding in this case the highest penalty that is known to man under the laws of our state and most of the states in the union, and that is the death penalty, for the malice aforethought murder of Larry Cox. I know that we all at times have some reservations about the most severe penalty, but is there any one of you that has any conscientious scruples in a proper case, now, and I say in a proper case, against imposing the death penalty. You do have conscientious scruples against the imposing of the death penalty even in a proper case, and I say in a proper case, and that is a case that regardless of how coldblooded it might be, you will not render a decision for the death penalty regardless of how serious it was, or how coldblooded it might be?
"JUROR (Mrs. Herbert E. Dixon): No, sir.
"THE DISTRICT ATTORNEY (Mr. Finch): And you are the same way?
"JUROR (Edna Plunkett): Yes, sir.
"THE DISTRICT ATTORNEY (Mr. Finch): And you are the same way?
"JUROR (Olivia Powers): Yes, sir.
"THE DISTRICT ATTORNEY (Mr. Finch): Everyone that raised their hand, you do have, and I say again when I ask you, in a proper case, that is, regardless of how coldblooded it might be, you still would not render the death penalty regardless of how coldblooded it might be, and that's in regard to everybody else that raised their hand?
"THE COURT: All right, get the Jurors names so that I may have them?
* * * * * *
"THE COURT: All right, Ethel Lloyd, Olivia Powers, Edna Plunkett, Tommy Lee Black, Ralph Cady, Jr., and Mrs. Herbert E. Dixon are excused for cause. All of you may be excused finally. Go by the Clerk's office and you may get your warrant for your services here today."
The Supreme Court of the United States in Witherspoon said this:
"Speciically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." (Emphasis added). 391 U.S. at 521-522, 88 S.Ct. at 1776-1777, 20 L.Ed.2d at 784-785.
In trying to be helpful to the trial courts in construing Witherspoon, this Court, by way of dicta, in Armstrong v. State, 214 So.2d 589 (Miss. 1968), attempted to outline one method by which the trial judge could satisfy himself that the tests imposed in Witherspoon had been met. Although Armstrong was indicted for murder, the jury found him guilty of manslaughter and the Court sentenced him to twenty years in the penitentiary. We affirmed the conviction and sentence in Armstrong. In Armstrong, with our eyes focused on Witherspoon, we said:
"The proper method of bringing the death penalty to the attention of the *894 special veniremen is for the trial judge to inform them that they have been summond as veniremen in a capital case and that a verdict of guilty could result in the infliction of the death penalty. The judge should then ask them if any member of the panel has any conscientious scruples against the infliction of the death penalty, when the law authorizes it, in proper cases, and where the testimony warrants it. If there are those who say that they are opposed to the death penalty, the trial judge should then go further and ask those veniremen, who have answered in the affirmative, whether or not they could, nevertheless, follow the testimony and the instructions of the court and return a verdict of guilty although that verdict could result in the death penalty, if they, being the judges of the weight and worth of the evidence, were convinced of the guilt of the defendant and the circumstances warranted such a verdict. Those who say that they could follow the evidence and the instructions of the court should be retained, and those who cannot follow the instructions of the court should be released. The mere fact that a venireman is opposed to the death penalty does not disqualify him as a juryman, if he can do his duty as a citizen and juror and follow the instructions of the court, and where he is convinced of the defendant's guilt he can convict him although the verdict of the jury may result in the death penalty's being inflicted upon the defendant." (Emphasis added). 214 So.2d at 593.
Of course, it is not mandatory for the trial judge to ask the questions about the death penalty, but it is preferable. When it becomes apparent that more detailed questioning is required to determine the true feelings of the prospective jurors about bringing in a verdict that would mean the death penalty, it would be better for a neutral person, namely, the trial judge, to ask the questions. After all, it is the trial judge's decision whether to sustain or reject challenges for cause, and he must satisfy himself as to the true feelings of the jurors on the death penalty.
Appellate counsel complain that the trial court did not poll the jury nor did it afford the accused an opportunity to be heard before imposing sentence. Appellant's trial counsel did not ask that the jury be polled nor did they request that appellant be allowed to speak. These rights were waived by the appellant.
Appellant complains that the record is silent as to what became of the 13th juror. The record does contain, in the judge's own words, a full explanation of the role of the alternate juror and the only occasion where the 13th juror would be called upon to act. The court also granted the defendant an instruction that "all 12 of the jurors must agree upon the verdict in this case." We assume, in the complete absence of any proof to the contrary, that the jury followed the instructions of the court.
Appellant complains that the state failed to produce all officers and other persons present when accused was interrogated, and thereby failed to meet the burden of proof that the confessions were voluntary. All officers who were present when any oral or written confession was made did testify at the hearing on the motion to suppress confessions. Although the appellant, Marvin Myers, Jr., took the stand on this motion and was exhaustively questioned about promises, threats, duress and force, all that he said that would in any wise reflect a threat was:
"A. Well, you wouldn't call it treating you very kindly when that one right there wanted to knock you through the wall.
"Q. That's the one that knocked you through the wall?
"A. I didn't say that he knocked me through the wall."
Appellant was referring to Detective E.S. Berkley of the Memphis, Tennessee, police *895 department, a black officer of 20 years experience. Detective Berkley testified on the motion to suppress confessions that he did not threaten the appellant in any way, that he personally apprised appellant of his constitutional rights, that there were no promises made to appellant; no threats, no duress and no force of any kind used on appellant by Detective Berkley or anybody else. Lieutenant Tom Marshall of the Memphis Police Department and Mississippi Highway Patrol Investigator Billy Herron also testified that they, together with Detective Berkley, were all the officers present, and that the oral and written confessions were freely and voluntarily given in their presence after appellant was fully informed of all of his constitutional rights; that the defendant read and initialed all corrected errors in his written confession and then signed his full name at the bottom of the confession. The state fully met the tests imposed in Agee v. State, 185 So.2d 671 (Miss. 1966), which were reiterated in Stevens v. State, 228 So.2d 888 (Miss. 1969), in this way:
"[W]hen, after the State has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness." (Emphasis added). 228 So.2d at 890.
The state did put on the witness stand at the hearing on the motion to suppress confessions "all the officers who were present when the accused was questioned and when the confession was signed." This was done even though the accused had merely mentioned on cross-examination that Detective Berkley had "wanted to knock [him] through the wall." No error was committed in admitting these confessions.
For the reason that the accused was not present and given an opportunity to be heard when his court-appointed counsel presented and argued their motion to withdraw as counsel, the judgment of the trial court is reversed and this case remanded for a new trial.
Reversed and remanded.
All Justices concur except SMITH and SUGG, JJ., who dissent.
SMITH, Justice (dissenting).
I join Judge Sugg in his dissent. We have said many times that errors in the trial of criminal cases, in order to justify reversal of a conviction, must be coupled with some prejudice to the defense. In this case, appellant neither testified himself nor offered any defense whatever. The sufficiency of the case for the prosecution is not challenged. In fact, the evidence of guilt was overwhelming and stands alone. I am unable to see how, under such circumstances, that appellant's rights were prejudiced by the matters forming the basis for reversal of his conviction.
I do seriously question, however, the adequacy of the questions propounded by the district attorney to prospective jurors as to their scruples against the imposition of the death penalty as a basis for their excusal, to comply with the rule laid down in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
To ask those who have expressed an unwillingness or reluctance to return a verdict which would result in imposition of the death sentence if they would, nevertheless, do so in a "proper" case seems to me practically meaningless. In this context the juror addressed is without any definition or standard whatever as to what a "proper" case might be. Nor is this aided by asking such persons if they would be willing to vote for such a verdict in a "serious" case or a "cold-blooded" case. It seems reasonable to assume that all murders are "serious" and all unlawful homicides not "cold-blooded" might properly be classified as not more than manslaughter.
*896 Since the case have been remanded and must be retried, I am concerned as to the type of examination of prospective jurors directed toward excusing them for cause on account of an expressed attitude against imposition of the death penalty. It seems to me that, to have any practical meaning, questions addressed to prospective jurors who have disclosed the fact that they entertain such an attitude toward the death penalty, must be capable of being understood and of being intelligently answered. Such questions, it seems to me, should touch upon the willingness and ability of such jurors to lay aside such scruples during their jury service, and should involve a statement on their part that, as jurors, they would be governed as to their verdict by the evidence and the law as given in the court's instructions, and that they could return a verdict upon the basis of those two things and those two things alone, notwithstanding the fact that such verdict might result in imposition of the death sentence. Rouse v. State, 222 So.2d 145 (Miss. 1969); Anthony v. State, 220 So.2d 837 (Miss. 1969).
In my view, appellant's conviction of murder should be affirmed and the case should be remanded for submission to another jury on the question of punishment only.
SUGG, Justice (dissenting).
I dissent from the majority opinion which reverses this case because of the absence of the appellant from the anteroom when his court-appointed counsel made an oral motion for permission to withdraw.
I dissent for three reasons. First, presence of the accused was not necessary and did not amount to a denial of a constitutional right of the defendant; second, an error to justify reversal must be prejudicial to the accused; and third, the question of the refusal of appointed counsel to withdraw rested within the sound discretion of the trial court and such discretion was not abused.
With respect to the necessity of the appellant's presence in the anteroom, when the motion of counsel to withdraw was made to the court, it is observed that in the case of Brown v. United States, 105 U.S.App. D.C. 77, 264 F.2d 363 (1959), the trial court was informed by appointed counsel prior to the trial and out of the defendant's presence, that defendant wished to have a new attorney because his court-appointed counsel had told him that he did not have a chance of "beating the indictment." The court stated that one of the questions presented was:
"1. Did the Trial Court err when, upon being informed by appointed counsel for the defendant prior to the commencement of trial and out of the presence of the defendant that `because I told him that I didn't think he had a chance of beating the thing [indictment], he wants to have a new attorney appointed', the Trial Court failed to advise the defendant that, although counsel had been appointed for him, he had the right to proceed in proper person, could discharge that counsel, and could elect whether he would so proceed or continue with appointed counsel?" (264 F.2d at 365).
In passing on the question, the court stated:
Nor can we reverse and remand for a new trial merely to give the appellant the satisfaction of being personally asked why he wanted to dismiss his counsel and have another appointed when, as far as we know or have been informed, he would give no reason except that given by his attorney. (264 F.2d at 366).
In a concurring opinion, Circuit Judge Burger stated:
I see common agreement in Judge Miller's opinion and in Judge Washington's dissent on this: that when, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. If the reasons are made known to the court, the court may *897 rule without more. If no reasons are stated, the court then had a duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known. Limited only by the necessity to ascertain the basis of the objection and then to rule on the reasons rather than on a naked request for new counsel, the trial court must be allowed very wide discretion. Delay in trial at the "eleventh hour" when the court, witnesses, jury, and all the machinery have been readied, cannot be countenanced solely because the client thinks his lawyer is not sufficiently optimistic. (264 F.2d at 369).
In Brown the Court held that the judge was not required to inform the appellant of his right to defend himself because the right of one to defend himself in the courts of the United States is conferred by statute and does not rise to the dignity of a right conferred and guaranteed by the Constitution. The Court did not decide the question of the validity of the appellant's complaint if his right had been constitutional rather than statutory.
Article 3, Section 26 of the Mississippi Constitution of 1890 provides, in part, as follows:
In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, * * *
In the instant case, appellant did not request permission to defend himself but asked, through his court-appointed counsel, permission to obtain civil rights' attorneys in order to properly defend himself. There is no indication in the record that appellant desired to defend himself and there is no indication on appeal that he desired to defend himself; therefore, I am of the opinion that the court was not required to advise him of his right afforded him by the Constitution of the State of Mississippi.
We have held that the defendant's presence at all stages of the trial is not necessary and in Brister v. State, 231 Miss. 722, 97 So.2d 654 (1957), certiorari denied 356 U.S. 961, 78 S.Ct. 1000, 2 L.Ed.2d 1069 (1958), the Court stated:
Upon the case being called, the parties announced ready for trial, and appellant, who was on bond, was called forward and took his seat within the bar in a chair designated by his counsel. Appellant kept his seat in the presence of the court and jury while the entire special venire was examined on voir dire, after which the judge and all the attorneys retired to an anteroom, across a hall from the courtroom, where the attorneys exercised their challenges resulting in the final selection of the jurors. Appellant did not go into the anteroom with the judge and the attorneys. No one told him to do so and no one told him not to do so. His attorneys did not think about it at all until twelve jurors had been selected, after which they made a motion for a mistrial. After the motion was overruled, appellant went to the room and was present when the thirteenth (alternate) juror was selected. There is no showing whatever that appellant was in any way prejudiced by not being present when the challenges were exercised, or that he did not have all the opportunity he or his attorneys desired to confer after completion of the voir dire and before the jurors were challenged. It also appears that appellant sat in the courtroom in the presence of the prospective jurors while the challenges were being exercised in the anteroom. (231 Miss. at 725-726, 97 So.2d at 654-655).
The judge observed that the defendant did not go to the anteroom and the judge did not consider it necessary to require him to do so.
In the instant case, the absence of the appellant from the anteroom did not constitute error.
The second reason for this dissent is that in order for an error to constitute grounds for reversal, it must be prejudicial to the accused.
*898 Appellant was convicted on overwhelming proof of guilt, and we have held that where the evidence was so overwhelmingly against the defendant that a verdict of not guilty would have indicated bias on the part of the jury in favor of the defendant, all errors would be harmless unless they went to the extent of amounting to a denial of some constitutional right of the defendant. Grace v. State, 212 Miss. 784, 55 So.2d 495 (1951); McCulloch v. State, 194 Miss. 851, 13 So.2d 829 (1943).
The question of permitting an attorney to withdraw, who has once accepted a case, rests within the sound discretion of the court as stated in 23 C.J.S. Criminal Law § 979(7), page 941 (1961), as follows:
An application by counsel for accused for leave to withdraw from the case is addressed to the sound discretion of the court, and such application may be denied where not timely made or supported by a showing of proper grounds for the relief sought.
The rule announced in the majority opinion may easily disrupt the orderly trial of criminal cases by affording defendants the opportunity to make accusations against their court-appointed counsel, and by their lack of cooperation with such counsel, afford them a simple expedient to halt a trial at any stage of the proceedings. I do not think that a defendant, in any case, should be given a device by which he can delay a trial at the "eleventh hour when the court, witnesses, jury and all the machinery have been readied."
I am of the opinion that the trial judge did not abuse his discretion in refusing to permit court-appointed counsel to withdraw and that he was under no duty to consider the matter in the presence of the accused.
I would reverse for sentence only because I am of the opinion that although the district attorney may conduct the voir dire examination of jurors with reference to the death penalty as authorized by section 1802, Mississippi Code of 1942 Annotated (1956), he did not meet the test announced in Armstrong, quoted in the majority opinion and join Justice Smith in his dissent with reference to the voir dire examination.
Because of the error committed in the voir dire examination, I would affirm as to guilt but reverse as to punishment and permit a new jury, under proper instructions of the court, to determine the punishment the prisoner should suffer. It is now a well settled rule that the issues of guilt and punishment may be severed. Witherspoon v. Illinois et al., 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Anthony v. State, 220 So.2d 837 (Miss. 1969); Rouse v. State, 222 So.2d 145 (Miss. 1969).
For the reasons assigned, I dissent.