James Peter FOY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–74–403.

Court of Criminal Appeals of Oklahoma.

Sept. 16, 1974.

Don Hamilton, Jon L. Hester, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Amalija J. Hodgins, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, James Peter Foy, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRM-73-1045, for the offense of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor. The jury recommended, and the court imposed, sentence of thirty (30) days in the County jail. From such judgment and sentence a timely appeal has been perfected to this Court.

The facts as adduced at trial are as follows: Defendant, a systems analyst for Honeywell Industries in Oklahoma City, worked at his job from 8:00 a.m. until 10:00 p.m. on May 3, 1973. From work he went to Gringo's, a private club, where his ex-wife Donna Hudson was employed. He remained there for about one hour discussing family matters and shooting pool with his ex-wife. According to the testimony of defendant and his ex-wife, he consumed three mixed drinks before he left the club at approximately 11:00 p.m. Mrs. Hudson further testified that defendant was not intoxicated when he left the club. After leaving Gringo's, defendant went to a nearby U-Totem convenience store where he conversed for several minutes with a friend named Richard Mason. Mason testified that defendant had not been intoxicated at the time of their conversation. From the convenience store defendant proceeded in the direction of Sambo's Restaurant after first stopping at his home for a short period of time. En route, defendant's automobile came under the observation of Oklahoma City Police Officer Ronald E. Mills. Mills testified that he saw defendant's car roll slowly through one stop sign without stopping. Accelerating to a speed of approximately 20 to 25 miles per hour, the car went through a second stop sign without stopping. Reaching an intersection, defendant stopped for a red light and when the light turned green, Officer Mills turned on his red light and followed defendant's car for about a quarter of a block. Defendant testified that he did not respond immediately to the officer's red light because of the density of traffic. He did, however, pull into the parking lot of Sambo's Restaurant. Officer Mills testified that he detected the odor of alcohol coming either from the defendant or the interior of the car. When he asked defendant to produce his driver's license, defendant gave him " . . . sort of a blank look . . . ." (Tr.9) After Mills repeated his request defendant replied that he did not have a license with him and Mills asked him to step back to the police car for an identification check. He testified that defendant had difficulty walking in that he was "sort of weaving, a shuffling step." (Tr.10) After they were

seated in the police car, Officer Mills noted that the odor of alcohol on defendant's breath became stronger, that his eyes were bloodshot, that his face was flushed and his clothing disordered. While his speech was understandable, it was ". . . slow and hesitating . . . as if he had to think about each . . . phrase that he said." (Tr.35) He also persisted in sticking his hands in his pockets, contrary to Officer Mills' instructions. Based upon his experience in dealing with drinking offenders, Mills stated his opinion that defendant was ". . . obviously intoxicated." (Tr.36) At this time Officer Mills arrested defendant and read to him his Miranda rights from a card and the rules pertaining to intoxication tests.

After allowing defendant to use the restroom at Sambo's, Mills took him to a mobile police laboratory used to test suspected drunk drivers. On the way, defendant requested that he be allowed to have his own doctor administer a blood alcohol test. He was then taken to Deaconess Hospital where a blood sample was taken at 12:11 a.m. by the emergency room doctor on duty, rather than defendant's personal doctor. Two vials of blood were drawn from defendant's arm. One vial was sealed in an evidence envelope by Officer Mills who later mailed it to the Oklahoma State Bureau of Investigation (OSBI) laboratory for chemical analysis. The results of that test, showing an alcohol content by weight of .14%, were introduced by the State through the testimony of OSBI chief chemist John McAuliff.

McAuliff further testified that this vial of blood had been destroyed during the testing process in accord with normal procedure and was, therefore, unavailable for independent testing by defendant. The disposition of the second vial of blood was a matter of dispute at trial. Defendant claimed that he had never been given the second vial by Officer Mills. Officer Mills, on the other hand, testified that he had given the vial to defendant at the hospital before defendant was taken to the police station and booked. Mills stated that

he supposed the second vial had been checked in with defendant's other property at the booking, but that he did not know whether this fact would be reflected in the police records.

In his first two propositions defendant argues that he was denied due process of law in that neither of the two vials of blood taken from his arm were available to him for independent testing. This, he claims, prevented adequate preparation for cross-examination as to the results of the State's chemical analysis. The first proposition is devoted to the position that defendant's inability to independently test the blood was a constitutional due process violation. The second proposition is devoted to a discussion of 47 O.S.1971, § 752. Defendant argues that § 752, in which provision is made for the person tested to have someone of his own choosing administer a test, impliedly provides for the testing of the State's sample if defendant's own sample was unavailable.

We will discuss the two propositions in reverse order, as we view § 752 as being dispositive of defendant's argument. The pertinent parts of 47 O.S.1971, § 752 read as follows:

"The person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer, providing the specimen for testing is obtained at the same time as or is an aliquot of that obtained by the law enforcement officer, and provided further, that said aliquot specimen may be delivered to any person qualified to analyze such specimens as the subject may designate, and provided further that such subject makes arrangements for delivery thereof, in order for any evidence under this act to be admissible. The failure or inability to obtain an additional test by a person shall not preclude the admission of the test or tests taken at the direction of a law enforcement officer."

We feel that defendant's argument is refuted by the statute itself. First we note that the language is couched in a permissive rather than mandatory manner, i.e. stating that the person tested *may* have a qualified person of his own choosing administer the test, and an aliquot specimen *may* be delivered to a qualified analyst designated by the subject *if* the subject makes arrangements for delivery. The burden is clearly placed upon the subject to comply with each condition, or any independent test results are inadmissible at trial. In the instant case there was a factual conflict in the testimony as to whether or not defendant was ever given the second vial of blood by Officer Mills. Apparently the jury resolved this conflict in Officer Mills' favor as they believed his testimony that he had given the vial to defendant. Therefore, it seems clear that defendant had the opportunity to obtain an independent analysis of the sample but simply failed to do so. The same conclusion would be reached even if we were to accept arguendo, defendant's claim that he never received the second vial. If that were the case, there was no testimony that defendant ever requested that he be given a sample, much less took any of the steps required by § 752, supra, mentioned above which would have rendered any independent test results admissible. Secondly, taking this line of reasoning a step further, we feel that defendant is incorrect in arguing that the statute impliedly grants a defendant the right to test the State's blood sample when the defendant does not have his own sample for independent testing. As OSBI chemist John McAuliff stated at trial, the sample retained by the State for testing is normally destroyed during the testing procedure. For this Court to hold that in the instant circumstances the State must provide defendant with part of its sample would be an unreasonable judicial intrusion into the State's testing procedure. A third basis for denial of relief under § 752, supra, is found in that part of the statute which makes the results of the State's analysis admissible despite the failure or inability of the subject to obtain his own test. We interpret this provision to negate the type of argument raised in the instant proposition. Defendant's argument under § 752 is accordingly found to be without merit.

■ In his first proposition defendant raises the same basic claim which was discussed above, but bases his argument on constitutional due process considerations rather than on a specific statute. In support of his argument, defendant cites several cases from other jurisdictions as standing for the proposition that due process requires that a defendant be allowed the opportunity to test the substance, or a substance drawn at the same time, as the State's substance. It is our view, however, that each case is distinguishable for reasons which will be set forth below. In Van Halen v. Municipal Court, 3 Cal.App. 3d 233, 83 Cal.Rptr. 140 (1970), a defendant charged with drunk driving subpoenaed the ampule used by the state in a breathalyzer test and the state replied that it had been destroyed after the test in accordance with normal procedures. The court reversed with directions to dismiss defendant's motion for writ of prohibition, stating at one point by way of dicta that evidence of a breathalyzer test or other evidence of intoxication is not a necessary element of a prosecution for drunk driving. The court also stated that defendant would have to make a showing not only that the ampule could have been retained and made available to him, but also that it would have been of value in his defense. As will be discussed later in our treatment of defendant's third proposition of error, the results of an independent analysis of defendant's blood was not critical to his defense, as Officer Mills' testimony provided sufficient independent evidence of intoxication to support the verdict. In any event, it is apparent that in *Van Halen*, supra, the defendant was not given an opportunity to obtain an independent test, whereas here, as discussed above in defendant's second proposition, defendant was afforded an opportunity to do so by virtue of § 752, su-

pra, but did not avail himself of such opportunity.

In Jackson v. State, Miss., 243 So.2d 396 (1971), also cited by defendant, the defendant was charged with possession of marihuana and moved before trial for production of a sample of the evidence and of the state's chemical analysis results. While the court there held that the defendant should have been provided the items sought, it specifically limited its holding at page 398, where it stated:

"We hasten to add that this opinion is limited to the alleged possession or sale of a prohibited substance where the outcome of the case is dependent upon its identification as contraband."

In James v. Commonwealth, Ky., 482 S.W. 2d 92 (1972), a defendant charged with sale of narcotics (cocaine) demanded a copy of the state chemist's report and a sample of the alleged contraband. The court there held that the state's failure to provide defendant with the items sought, on the ground of impossibility, to be erroneous since the state introduced both at trial and they were obviously available. Such is not the case here as neither of the vials of blood could have been provided to defendant at trial. Hence, the State in the instant case could not be said to have withheld evidence which was available as was the situation in *James,* supra.

In State v. McArdle, W.Va., 194 S.E.2d 174 (1973), and State v. Harr, W.Va., 194 S.E.2d 652 (1973), the defendants were charged with marihuana violations under a statutory scheme whereby part of the marihuana plant was illegal and part was legal. Further, the chemical test performed on the evidence by the state did not distinguish between the legal and illegal portions. As the defendants claimed that they had possessed only the legal parts of the plant, it was imperative to their defense that they be allowed to conduct independent tests on the evidence. We do not feel that the possible results of an independent test of the blood sample in the instant case would have been of such critical impor-

tance since, as will be discussed later, there was sufficient independent evidence other than the blood test to convict the defendant. Such is also the case in Armstrong v. State, Miss., 214 So.2d 589 (1968), a murder prosecution where the court held that the denial of documentary evidence sought by the defendant was not prejudicial because it could not have changed the course of the trial or influenced the verdict. Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973), relies heavily on *Jackson, Armstrong, Mc-Ardle* and *James,* supra, and is distinguishable from the instant case for the same reasons as each of the other four cases. Whatever the merits of due process arguments in the cases cited by defendant under this proposition of error, they do not apply to the instant case in the manner as suggested by defendant. We must, therefore, find his first proposition of error to be without merit.

█ In his third proposition defendant alleges that the evidence was insufficient to sustain the verdict. We disagree for two reasons: First, we note that the testimony of Officer Mills alone would have been sufficient to support a conviction even without the positive results of the State's blood test. In Hill v. State, Okl. Cr., 523 P.2d 1114 (1974), citing Tilley v. State, Okl.Cr., 511 P.2d 586 (1973), and Lippoldt v. State, Okl.Cr., 271 P.2d 745 (1954), we held that testimony from an officer that he had observed a defendant's vehicle weaving on the highway and that the defendant was intoxicated at the time of arrest was sufficient to sustain a conviction for driving under the influence of intoxicants. In the instant case Officer Mills did not observe defendant's vehicle weave, but he did see it disregard two stop signs. This, plus Mills' testimony as to defendant's condition when arrested, was in our view sufficient evidence to support the verdict. Further, the testimony of OSBI chemist John McAuliff that his test of defendant's blood sample indicated an alcoholic content of .14% ethyl alcohol by weight provided ample basis for the verdict. Title 47 O.S.1971, § 756(c) provides

that evidence that there was ten hundredths of one percent or more by weight of alcohol in a sample of blood shall be admitted as prima facie evidence that the person was under the influence of alcohol or intoxicating liquor.

We thus dismiss defendant's third proposition with the observation that the evidence was sufficient to support the verdict.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.