Ira Gentry, Jr., was convicted in the Circuit Court of Attala County, Mississippi on a charge of forcible rape. In its verdict the jury fixed the sentence at life imprisonment.
On appeal, appellant contends that the trial court committed reversible error in three areas, to-wit: (1) by denying that part of a motion for discovery made by the defendant in which the defendant sought to have a slide, containing alleged live sperm taken by a medical doctor from the vaginal tract of the prosecutrix shortly after the alleged rape, turned over to the defendant for a laboratory analysis to be made by experts of his choosing; (2) by allowing an in-court identification of the defendant by the prosecutrix after the defendant had been earlier identified by her at a show-up conducted by police officers on the day of the alleged attack, when the defendant was without the assistance of legal counsel, and (3) by not granting a directed verdict at the close of all the evidence.
The prosecutrix, a sixteen year old girl from out of the State who was visiting her grandmother in Kosciusko, Mississippi, testified that on July 16th, 1973, between 8:45 A.M. and 9:15 A.M., she went onto a vacant lot near her grandmother's house to look for tree stumps suitable for making patio furniture. She testified that when she came onto the lot she sensed that someone was behind her, and she turned around and saw a man approximately one step behind her. She testified further that the man asked her if she wanted to have sex with him and that he would give her five dollars. She testified that she answered, "No," and started walking back off the lot, and that the man grabbed her and pushed her down. She testified that after she was down she screamed and the man raised his hand and told her to shut up. She testified that she thought he might kill her if she continued screaming, so she started talking to him in an effort to dissuade him from continuing, but that he ordered her to take off her pants. When she refused he put his hand around her throat and started squeezing until she passed out. She testified she regained consciousness and found her pants off, the appellant's pants down and that she could "feel him," and that he later pulled off her shirt and bit her on her breasts. She testified she faked unconsciousness because of fear until the man got up and she heard him walk away.
After the attack as described by the prosecutrix, she ran to her grandmother's house screaming and the police were called. She gave the police a description of the man she said attacked her, saying he was a black man approximately fifty years old, medium build, with a tooth missing in front. The police advised the girl's relatives to take her to a doctor for an examination, and the police then proceeded to look for suspects, using the description given them by the young girl.
Dr. C.F. Lacey, a Kosciusko physician, testified that he examined the prosecutrix at the hospital emergency room on the morning of the alleged attack, that he found her to be crying, that she had bruises on her neck, and that upon a pelvic examination and microscopic examination of a smear taken from the vaginal tract he found live sperm indicating a penetration of the vagina.
W.W. Cummings, a Kosciusko City policeman, was called as a witness by the appellee and testified that he answered the call for a policeman to come to the grandmother's house and arrived there to find the prosecutrix nervous and crying, and that he observed marks on her neck. After hearing her description of the rape and of her alleged assailant, he was aware that Ira Gentry, the appellant, had been given the job of *Page 1231 
clearing the timber from the vacant lot in question in return for the timber, and that as of that day the appellant had not completed his work. Officer Cummings further testified that about 4:30 P.M., on the day of the alleged attack, he received a telephone call from the appellant in which the appellant stated he understood the police were looking for him and he wanted to help clear up the matter. Officer Cummings then sent police officer Hugh Ballard to drive the appellant to the house where the prosecutrix was for the purpose of an identification of the appellant by the girl or elimination of him as a suspect if she did not identify him. Testimony was given by officer Cummings that earlier in the day three other men fitting the general description of the man who attacked prosecutrix were taken individually to the grandmother's house for identification purposes, and the girl positively stated that none of those men was the man who attacked her. Upon the appellant being brought to the house, the girl did identify him as her assailant. The appellant was arrested and indicted on a charge of forcible rape.
Prior to the trial, the appellant made a motion for discovery of evidence and information in the possession of the state which included, among other things, a request to inspect the laboratory slide used to determine if sperm were present in the prosecutrix on the day of the alleged rape, so that the slide might be examined by the defendant's own pathologist. This motion was filed with the court on September 7th, 1973, approximately seven weeks after the slide was prepared by Dr. Lacey. The trial judge sustained that part of the motion relative to production of statements made by the appellant and production of all items taken from the appellant at the time of his arrest and incarceration. The remainder of the motion was denied, thereby denying the appellant the opportunity to examine the slide prepared by Dr. Lacey.
At the trial the prosecutrix positively identified the appellant as the man who attacked and raped her in the vacant lot on July 16th, 1973.
In his defense, the appellant offered the testimony of himself and two others, Annie Mae Triplett and Ella Dean Triplett, all of whom testified that the appellant could not have committed the act charged because he was in the house of Annie Mae Triplett from the night of July 15th, until around noon on July 16th, the alleged rape having occurred on the morning of July 16th, around 9:30 A.M. The defendant also called Mary Brown to the stand. She testified that she went to the house of Annie Mae Triplett about noon on the day in question and that Ira Gentry was there with Annie Mae Triplett.
The appellant's first assignment of error is that the trial court was in error in denying the appellant access to the slide prepared by Dr. C.F. Lacey and used by Dr. Lacey as a basis for testifying that mobile spermatazoa were present in the vaginal tract of the prosecutrix shortly following the alleged attack. The appellant and the appellee cite the leading cases of McCrawv. State, 260 So.2d 457 (Miss. 1972) and Armstrong v. State,214 So.2d 589 (Miss. 1968), both of which hold that an accused's request for production or inspection of tangible evidence in the possession of the prosecution lies within the sound discretion of the trial court.
In Armstrong v. State, the trial court refused to grant the defendant's motion for inspection and production of certain photographs in possession of the state. After an extensive review of the authorities this Court said that:
 [A]lthough the trial judge has discretionary power in determining whether or not tangible evidence in the possession or under the control of the prosecuting attorney should be given to the defendant for his inspection, nevertheless, the defendant should be permitted to inspect tangible evidence which may be used against him or which may be used in his defense. 214 So.2d 596.
However, the Court in Armstrong then found that the denial of the right to inspect the requested evidence was not prejudicial to the defendant because even if there had *Page 1232 
been an early inspection of the tangible evidence it would not have changed the course of the trial or influenced the verdict of the jury. Thus, this Court said in Armstrong if the denial was error, it was not reversible error and the conviction was affirmed.
In this case the Court, while it feels the better practice would have been to provide the defendant with any physical evidence used in scientific tests as the basis of testimony against him, does not find reversible error under these circumstances in the failure to do so, for several reasons. First, the defendant was not contesting that the young girl had been raped by someone. His entire defense was what is commonly referred to as an alibi. His entire case was built around testimony of himself and others that on the morning of July 16th, 1973, he was not on the vacant lot where the assault took place. Secondly, the slide was prepared on July 16th, 1973. The request to have the slide inspected by a pathologist of the defendant's choosing was made on September 7th, 1973. The appellant did not advise either the trial court, in his motion for a new trial, or this Court what he would expect to prove by an examination of the slide and how he would be prejudiced by the absence of an examination. Of course, the live sperm which Dr. Lacey testified he observed on the morning of July 16th would have died long before the motion to inspect was even made by the appellant, even if the slide had been maintained for use as an exhibit, but it was not shown at any time that Dr. Lacey kept the slide after he examined it microscopically. The slide, if it still did exist at the time of the trial, was not brought to court nor offered into evidence, nor was there any reason for it to be. It is of the category of physical evidence whose evidentiary value is fleeting. For these reasons the Court is of the opinion that this assignment of error is without merit.
The appellant also assigns as error the allowing of the prosecutrix to make an in-court identification of the defendant after she had identified him at a show-up on the day of the alleged attack at a time when the defendant was without the assistance of counsel. The Court is of the opinion that this assignment of error is without merit for the reason that this Court and the United States Supreme Court have held consistently that the constitutional right to counsel does not attach to a pre-indictment show-up performed for the purpose of including or ruling out a suspect as a possible perpetrator of a recent criminal act, provided that the show-up is not so unduly suggestive as to taint it. There is no evidence here that when officer Ballard arrived at the house of prosecutrix's grandmother with the appellant that anyone in any way suggested to prosecutrix that she should identify the appellant as her attacker. To the contrary, as far as the record in this case is concerned, the procedure followed in the show-up of the appellant was no different from that used in the three previous show-ups in which the prosecutrix declined to identify any of the three suspects as her attacker. This Court has recently spoken to the matter of pre-indictment identification in Cox v. State,326 So.2d 794 (Miss. 1976):
 The right to counsel at a lineup proceeding as held in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), was thereafter specifically limited to a post-indictment situation in which a lineup is held after the formal initiation of judicial criminal proceedings. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). This Court has adopted the rule of Kirby and held that the right to counsel does not apply to pre-indictment lineups. Howard v. State,
Miss., 319 So.2d 219 (1975); Hobson v. State, 285 So.2d 464 (Miss. 1973); Allen v. State, 274 So.2d 136 (Miss. 1973); Chandler v. State, 272 So.2d 641
(Miss. 1973). 326 So.2d 794, 795.
Appellant argues that Kirby should not apply here because in this case the police were looking for the appellant and their prior knowledge about the appellant working in the vacant lot where the alleged attack occurred and fitting the general description given the police by the girl made *Page 1233 
him a named suspect. We are of the opinion that these circumstances do not take this case out of the general rule announced in Cox v. State, supra, as to pre-indictment identification. Moreover, the record reflects that the in-court identification of the appellant by the prosecutrix was not based upon her seeing him at the show-up, but upon her observation of him, as she testified, for some twenty minutes at the time of the alleged attack.
The appellant also argues that the trial court erred in refusing to grant a directed verdict at the close of all the testimony. The appellant argues to the Court that his alibi defense was uncontradicted and called for a finding of not guilty. The record shows that the appellant's alibi was directly contradicted by the prosecutrix and therefore created an issue for the jury as to the credibility of the witnesses, and the trial court was correct in denying the motion for a directed verdict.
The Court finding no prejudicial error in the areas raised by the appellant, and finding the verdict to be within the evidence, is of the opinion that the verdict should be and is affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.